# United States Court of Appeals
# for the Federal Circuit

---

**PAULINE GARCIA,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2018-1038

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 15-3669, Chief Judge Robert N. Davis, Judge Coral Wong Pietsch, Judge William S. Greenberg.

---

Decided: November 5, 2018

---

WILLIAM L'ESPERANCE, Albuquerque, NM, argued for claimant-appellant.

MARTIN F. HOCKEY, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT; BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before O'MALLEY, REYNA, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Teofila Garcia, the late husband of appellant Pauline Garcia, was a veteran of the United States Army. In 2002, he filed a claim with the Department of Veterans Affairs for disability benefits based on a mental disorder characterized by paranoia, which he asserted was connected to his military service. The Board of Veterans' Appeals denied his claim in 2006. After initially appealing to the Court of Appeals for Veterans Claims (Veterans Court), Mr. Garcia successfully moved to dismiss the appeal, and the Board's decision became final.

Mr. Garcia then collaterally challenged the 2006 Board decision through a motion contending that the Board had committed clear and unmistakable error (CUE) in that decision. The Board denied Mr. Garcia's CUE motion in 2010. In filings with the Board and the Veterans Court after the 2010 Board decision, Mr. Garcia—succeeded by Mrs. Garcia when her husband died—raised new allegations of CUE. The Veterans Court ultimately determined that those new CUE allegations made in the subsequent filings were barred by regulation. *Garcia v. Shulkin*, 29 Vet. App. 47 (2017). Mrs. Garcia appeals to this court. We reject Mrs. Garcia's two challenges to that determination and therefore affirm.

## I

### A

Mr. Garcia served in the United States Army from 1952 to 1954. The military's records of his medical treatment during service were among those destroyed in a fire in 1973 at the National Personnel Records Center in St. Louis, Missouri. The record of his medical examination upon leaving the service was not destroyed. That record

reveals a normal psychiatric state and, more generally, no severe illnesses or injuries.

Mr. Garcia first saw Dr. John Smoker, a private physician, in 1965 for a burn from a welding accident. In 1969, Dr. Smoker diagnosed Mr. Garcia with, and prescribed medication for, paranoid schizophrenia.

In 2002, Mr. Garcia submitted a claim for disability benefits to the Albuquerque regional office of the Veterans Benefits Administration of the U.S. Department of Veterans Affairs (VA), alleging service connection of disability-causing paranoid schizophrenia. The regional office denied the claim. Mr. Garcia appealed to the Board of Veterans' Appeals, which held a hearing in September 2004 at which both Mr. Garcia and Mrs. Garcia gave testimony. In December 2004, the Board remanded the case to the regional office for a VA psychiatric examination, directing the examiner to "provide a current diagnosis and indicate whether any mental disorder currently shown is characterized by paranoia" and to state "the medical probabilities that it is attributable to the veteran's period of military service." J.A. 130.

The Appeals Management Center, processing the remand, requested a psychiatric examination on January 4, 2005. A VA examiner, Dr. Greene, conducted the examination on February 3, 2005. Dr. Greene's report leaves unclear if she looked at Mr. Garcia's claim file and medical records, but it shows that she took a medical history from Mr. Garcia, who stated that he saw a psychiatrist twice for paranoia while in the service. Dr. Greene found that Mr. Garcia met the "diagnostic criteria for the diagnosis of schizophrenia, paranoid type, for which he has been treated for many years and *claims he was first seen for paranoia in the service* and that as likely as not this disorder started in the service *per the history given*." J.A. 57 (emphases added).

In October 2005, the Appeals Management Center, upon receiving and reading the examination report, returned Mr. Garcia's file to Dr. Greene with a request that she "please state in [her] report that [she has] reviewed the claims folder[;] if not we run the risk of asking for a repeat examination and/or addendum." J.A. 58 (capitalization omitted). The Center also asked Dr. Greene to "provide a rationale for [her] finding" that "as likely as not this disorder started in the service per the history given." J.A. 59, 57. The Center noted that such a finding was not usually associated with service records like those of Mr. Garcia, which revealed that he had been promoted, had not lost time for being absent without leave or confinement, had been awarded the Good Conduct Medal, and had not been barred from further service or enlistment after successfully completing his full, two-year term of service. *Id.* at 59. According to the Center, people with paranoid schizophrenia, "in service, are often identified, wrongly, as discipline problems" and their records often show grade or rank reductions, frequent absence without leave, confinement, early discharge, and a bar on re-enlistment. *Id.* The Center advised that Dr. Greene consider the supporting rationale for her finding that Mr. Garcia's paranoid schizophrenia manifested itself during service in 1952–54 and stated that her rationale "must include studies, facts, treatment and other evidence or information that shows the progression of this disability over time." *Id.*

A week later, Dr. Greene responded by adding a one-sentence addendum to her initial report: "After review of the [claim] file, [I] now feel it is impossible to say, without resorting to mere speculation, as to whether this veteran's schizophrenia, paranoid type actually started in Service, without more documentation and records." J.A. 60. The Center then issued a Supplemental Statement of the Case, in which it "confirmed" the previous denial of service connection for Mr. Garcia's condition. J.A. 127.

On appeal to the Board once again, Mr. Garcia, through the American Legion as his non-attorney representative, submitted a brief arguing that Dr. Greene's medical report and addendum did not take account of other record evidence that supported his claim for benefits. The brief refers to and quotes from the Appeals Management Center's October 2005 request to Dr. Greene, *see* J.A. 130–31; *id.* at 131 (quoting J.A. 59), but it contains no challenge to that request as improperly having led Dr. Greene to change her conclusion. The Board denied Mr. Garcia's claim in October 2006. Mr. Garcia—who was represented by counsel at that time and has been ever since—appealed that decision to the Veterans Court. But he soon moved to dismiss the appeal, and the Veterans Court granted his motion.

B

In August 2007, Mr. Garcia initiated a collateral challenge to the Board's denial of his claim for disability benefits. He sent the regional office a form alleging "[c]lear and unmistakable error" in that the "[c]orrect facts were not before the Board in 2004 and 2006." J.A. 71 (citing 38 C.F.R. §§ 3.105(a), 20.1403, 20.1404). He "request[ed] [a] specific ruling on C.U.E.," J.A. 70, but the regional office determined that it did not have jurisdiction to decide his CUE claim because "[r]egional offices do not have the authority to overturn a Board . . . decision in the absence of new and material evidence," J.A. 67. Mr. Garcia then asked for the matter to be sent to the Board.

On July 29, 2008, Mr. Garcia submitted to the Board a more detailed CUE motion challenging the Board's 2006 decision denying his claim of service connection of his

paranoid schizophrenia.[1]  He argued, among other things, that the record supported "several independent medical conclusions" of service connection, that he was entitled to more assistance from the VA in light of the loss of his medical records in the 1973 fire, and that he was entitled to the benefit of the doubt on the issue of service connection "[g]iven the evidence available at the time, including the testimony of [Mr. Garcia] and the reports of various medical providers." J.A. 63–65.  He did not argue that the Appeals Management Center had improperly pressured Dr. Greene to change her service-connection conclusion or that his right to constitutional due process had been violated.  Nor did he point to or rely on the testimony that Mrs. Garcia gave at the 2004 Board hearing.

The Board denied the CUE motion in April 2010.  It found, among other things, that "there was no competent evidence, to include lay testimony, establishing a continuity of symptomatology since service."  J.A. 76.  In July 2010, Mr. Garcia filed a motion to reconsider under 38 U.S.C. § 7103 and 38 C.F.R. §§ 20.1000, 20.1001, challenging that finding.  He stated that "counsel [in earlier filings] may have not adequately notified the Board of portions of the record which bear directly upon the C.U.E. issue at bar," J.A. 18—specifically, Mrs. Garcia's 2004 Board testimony, which he claimed indicated the existence of a paranoia disorder when the two began dating soon after he returned from service.  Acting under 38 C.F.R. §§ 20.102(a) and 20.1001(c), the Board's Deputy Vice Chairman denied the motion to reconsider, concluding that, although Mrs. Garcia's testimony may have

---

[1]    Neither party here suggests that the legal issues presented to us call for distinguishing Mr. Garcia's 2008 filing with the Board from his 2007 filing originally made with the regional office.  For simplicity, we refer to the 2008 filing as encompassing both.

affected the weighing of evidence, including contrary evidence, any failure to consider her testimony did not constitute clear and unmistakable error.

Mr. Garcia appealed the Board's denial of his CUE motion to the Veterans Court. At that point, Mr. Garcia argued, for the first time, that the Appeals Management Center had denied him due process by "secretly litigat[ing] against" him in "attack[ing]" Dr. Greene's initial finding regarding service connection and "suggest[ing] what findings a medical examiner should make." J.A. 93–94. But the Veterans Court determined that the allegation of a due process violation had not been presented to the Board, so it dismissed Mr. Garcia's appeal, for want of jurisdiction, insofar as it made this allegation.

Mr. Garcia also argued to the Veterans Court that the Board committed clear and unmistakable error by not adequately considering Mrs. Garcia's 2004 testimony. The Secretary argued that Mr. Garcia had not properly presented to the Board this allegation of clear and unmistakable error. But the Veterans Court, citing Mr. Garcia's motion to reconsider, "set aside" the 2010 Board decision and remanded the case to the Board for full consideration of the allegation in the first instance. J.A. 34.

On remand, the Board in October 2012 ruled against the allegation—now made by Mrs. Garcia (substituted for Mr. Garcia, who had passed away)—of clear and unmistakable error based on the asserted failure to consider Mrs. Garcia's 2004 testimony. In early 2013, Mrs. Garcia submitted a motion to reconsider the 2012 Board decision. She contended that the 2006 Board decision as to service connection would have been manifestly different if the Board had considered her 2004 testimony. In mid-2013, the Deputy Vice Chairman denied the motion for reconsideration.

The early-2013 filing that includes the motion to reconsider also includes a motion to vacate the 2012 Board

decision. In that motion, Mrs. Garcia contended that the 2012 decision failed to address what she asserted was the "obvious denial" of due process when, in 2005, the Appeals Management Center returned Dr. Greene's examination report for further consideration, leading to a different opinion by Dr. Greene. J.A. 37. In mid-2013, the Board denied the motion to vacate, treating it as governed by 38 C.F.R. § 20.904 ("Vacating a decision").

Mrs. Garcia appealed the Board's October 2012 decision to the Veterans Court. She again argued that the Appeals Management Center's actions regarding Dr. Greene violated her late husband's right to due process and that the Board's failure to consider her testimony was clear and unmistakable error. The Veterans Court again found that the allegation of a due process violation had not been properly presented to the Board. And it again remanded the matter of Mrs. Garcia's testimony for further consideration.

In that remand, the Board again ruled against the allegation of clear and unmistakable error based on Mrs. Garcia's 2004 testimony. Mrs. Garcia appealed that decision to the Veterans Court. She again pressed both the due process and 2004 testimony allegations of clear and unmistakable error.

The Veterans Court found that neither allegation had been presented to the Board in Mr. Garcia's CUE motion or before the Board issued its decision on that CUE motion in 2010. *Garcia*, 29 Vet. App. at 54. On that basis, the Veterans Court ruled that a governing regulation, 38 C.F.R. § 20.1409(c), as construed in governing precedent, "requires that all possible errors in a final Board decision be raised at the time a motion for revision of that Board decision based on CUE is filed," barring "later CUE challenges to [that] Board decision." *Garcia*, 29 Vet. App. at 54. For that reason, the Veterans Court concluded that the Board lacked jurisdiction to entertain either allega-

tion and that the Veterans Court itself therefore lacked jurisdiction, and it dismissed the appeal with prejudice. *Id.* at 53, 56.

Mrs. Garcia timely appealed to this court. We have jurisdiction pursuant to 38 U.S.C. § 7292.

## II

This court has jurisdiction to review the Veterans Court's legal determinations, 38 U.S.C. § 7292(d)(1), and to review and decide any challenge to the validity or interpretation of a statute or regulation "to the extent presented and necessary to a decision," *id.* § 7292(c). But this court does not have jurisdiction to review the Veterans Court's factual determinations, or its application of law to the facts of a particular case, "[e]xcept to the extent that an appeal under this chapter presents a constitutional issue." *Id.* § 7292(d)(2).

## A

As this court explained in an en banc decision years ago, Congress has provided for two mechanisms for a claimant like Mr. Garcia to seek to revise a Board denial of a claim for disability benefits after the denial has become final. *See Cook v. Principi*, 318 F.3d 1334, 1337 (Fed. Cir. 2003) (en banc). One is through showing new and material evidence. 38 U.S.C. § 5108; *see* 38 C.F.R. § 3.156(a). The second is through showing clear and unmistakable error. 38 U.S.C. § 7111; *see* 38 C.F.R. § 20.1400. This case involves the latter form of collateral attack—a request for revision of a Board decision based on clear and unmistakable error under § 7111, which provides, in pertinent part:

> (a) A decision by the Board is subject to revision on the grounds of clear and unmistakable error. If evidence establishes the error, the prior decision shall be reversed or revised. . . .

(e) Such a request shall be submitted directly to the Board and shall be decided by the Board on the merits . . . .

The regulations pertaining to CUE motions to the Board, contained in 38 C.F.R. subpart O, §§ 20.1400–1411, set forth several requirements that are relevant here. *First*: The substantive standard for relief is high. "Clear and unmistakable error is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error." 38 C.F.R. § 20.1403(a); *see also id.* § 20.1403(c) ("To warrant revision of a Board decision on the grounds of clear and unmistakable error, there must have been an error in the Board's adjudication of the appeal which, had it not been made, would have manifestly changed the outcome when it was made. If it is not *absolutely clear* that a different result would have ensued, the error complained of cannot be clear and unmistakable." (emphasis added)).

*Second*: The pleading requirements for a CUE motion are demanding:

Specific allegations required. The motion must set forth clearly and specifically the alleged clear and unmistakable error, or errors, of fact or law in the Board decision, the legal or factual basis for such allegations, and why the result would have been manifestly different but for the alleged error. Non-specific allegations of failure to follow regulations or failure to give due process, or any other general, non-specific allegations of error, are insufficient to satisfy the requirement of the previous sentence. Motions which fail to comply with the requirements set forth in this paragraph shall

be dismissed without prejudice to refiling under this subpart.

*Id.* § 20.1404(b). Pursuant to that regulation, this court has ruled that "each 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the [Board] before the Veterans Court can exercise jurisdiction over it." *Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002); *see* 38 U.S.C. §§ 7252, 7261. CUE motions, unlike filings in direct appeals, are not liberally construed; instead, the regulations governing CUE motions "place the onus of specifically raising each issue on the claimant." *Robinson v. Shinseki*, 557 F.3d 1355, 1360 (Fed. Cir. 2009) (citing § 20.1404(b)); *see also Andrews v. Nicholson*, 421 F.3d 1278, 1283 (Fed. Cir. 2005) (requirement to liberally construe pleadings does not apply to CUE motions filed by counsel).

*Third*: Under 38 C.F.R. § 20.1409, a regulation adopted pursuant to 38 U.S.C. § 501(a) and generally upheld in *Disabled American Veterans v. Gober*, 234 F.3d 682, 702 (Fed. Cir. 2000), a claimant may not freely file multiple CUE challenges to the same Board decision regarding a particular claim for benefits. Section 20.1409(a) first identifies what a "final" decision on a CUE motion is: "A [Board] decision on a motion filed by a party or initiated by the Board pursuant to [subpart O, 38 C.F.R. §§ 20.1400–1411, governing CUE challenges to Board decisions] will be stamped with the date of mailing on the face of the decision, and is final on such date." 38 C.F.R. § 20.1409(a); *see also id.* § 20.1409(b) (certain dismissals without prejudice and referrals of CUE motions to a regional office are not "final decision[s] of the Board" under § 20.1409). Section 20.1409(c) then states an anti-multiplicity rule:

Once there is a final decision on a motion under this subpart relating to a prior Board decision on an issue, that prior Board decision on that issue is

> no longer subject to revision on the grounds of clear and unmistakable error. Subsequent motions relating to that prior Board decision on that issue shall be dismissed with prejudice.

This court has approved the Secretary's reading of § 20.1409(c), a rule adopted in 1998, to "permit[] only one CUE challenge to a Board decision on any given disability claim." *Hillyard v. Shinseki*, 695 F.3d 1257, 1260 (Fed. Cir. 2012) (deferring to agency explanation of § 20.1409(c) in *Proposed Rules*, 63 Fed. Reg. 27,534, 27,538 (Dep't of Veterans Affairs May 19, 1998), as a reasonable interpretation, and holding that the regulation barred the claimant from filing a second CUE motion after the Board's decision on the claimant's first CUE motion became final, even though the allegations of error differed).

## B

On appeal, Mrs. Garcia argues that the Veterans Court erred in holding that the Board was barred by regulation from considering the allegations of clear and unmistakable error now at issue (concerning constitutional due process and Mrs. Garcia's 2004 testimony) because she (more precisely, her late husband) did not present those CUE allegations to the Board in the 2008 CUE motion itself or at any time before the Board's 2010 decision on that motion. We address only the two focused challenges to the Veterans Court's ruling that Mrs. Garcia presents here. We reject those challenges.

We note that Mrs. Garcia does not present any challenge within this court's jurisdiction under 38 U.S.C. § 7292(c) or (d)(1) to the Veterans Court's interpretation of § 20.1409(c) as reaching beyond the situation of a separate, new CUE motion filed after a Board decision on a first CUE motion attacking the same claim determination. That was the situation in *Hillyard*—where, in fact, the second CUE motion was filed after the Board's decision on the first CUE motion became final in the strong

sense that available appellate direct review of the decision was complete.  695 F.3d at 1258 (explaining that, after the Board denied the first CUE motion and the Veterans Court affirmed, the Board could not later entertain a second CUE motion attacking the same disability determination by the Board).[2]  *Hillyard* thus had no occasion to interpret the regulation's application to other situations. Indeed, the court in *Hillyard* was addressing a different question, stating that the appeal presented "a solitary legal question: what the term 'issue' means in 38 C.F.R. § 20.1409(c)."  *Id.*

Mrs. Garcia does not challenge the interpretation of § 20.1409(c) as reaching various situations where just one formal CUE motion is filed.  One such situation involves CUE allegations that are presented in the continuing proceedings on the initial motion itself, but only after the motion was filed.  *Garcia*, 29 Vet. App. at 54.  As an example of that situation, the new allegations might be presented in the proceedings on the initial CUE motion after the Board issues a "final" decision on the initial motion under § 20.1409(a) and after that decision is later set aside on appeal and the matter remanded.  Any questions about, for example, the availability of amendments to a CUE motion during the Board's consideration, or on

---

[2]  *See* Claimant-Appellant's Br., *Hillyard v. Shinseki*, No. 2011-7157, 2011 WL 5561120, at *2–3 (Fed. Cir. Oct. 20, 2011) (stating that Mr. Hillyard filed a first CUE motion in 2001, the Board denied that motion, the Veterans Court affirmed the Board's denial in 2003, Mr. Hillyard filed an appeal to the Federal Circuit that he then withdrew, and Mr. Hillyard filed his second CUE motion several years later, in 2006).

remand after the Board's decision is set aside, are not before us.[3]

1

Regarding the alleged due process violation, we limit our ruling to the situation presented here: undisputed facts demonstrate that the allegation could have been, but was not, presented in the 2008 CUE motion. The parties agree, and the record clearly shows, that Dr. Greene's initial examination report, the Appeals Management Center's follow-up request, and Dr. Greene's addendum were provided or were available to Mr. Garcia in 2006, at the time he submitted his brief to the Board in support of his claim for benefits. Oral Arg. at 5:40–6:00; *id.* at 11:42–12:00; *see* J.A. 130–32 (2006 brief on behalf of Mr. Garcia stating that Dr. Greene's report and addendum are part of the claim file and quoting from the Center's follow-up request). The parties also do not dispute that Mr. Garcia first alleged the constitutional due process violation in 2011 in his appeal to the Veterans Court of the Board's 2010 decision denying his CUE motion. *See* Garcia Br. 2; VA Br. 8; J.A. 9–10 (Veterans Court noting that the parties did not dispute this point); *see also* J.A. 93 (Mr. Garcia's 2011 brief to Veterans Court). In these circumstances, the Veterans Court properly found that Mr. Garcia did not raise a due process challenge in his initial CUE motion or, indeed, until after the Board ruled on that motion.

---

[3]    Mrs. Garcia also does not challenge the Veterans Court's ruling that it lacked jurisdiction to review the denials of the motions to reconsider and the motion to vacate. *Garcia*, 29 Vet. App. at 56 (relying on *Mayer v. Brown*, 37 F.3d 618, 619 (Fed. Cir. 1994) (discussing motions to reconsider), and *Harms v. Nicholson*, 20 Vet. App. 238, 243 (2006) (discussing motions to vacate)).

The Veterans Court drew the conclusion that the allegation of a due process violation was no longer permitted at the time Mr. Garcia presented it. According to the Veterans Court, that conclusion follows from 38 C.F.R. § 20.1409(c)'s bar on presenting a CUE challenge regarding a claim for benefits where that challenge was omitted from an earlier-filed CUE motion regarding the same claim for benefits. *Garcia*, 29 Vet. App. at 54.

Mrs. Garcia makes only one argument against the Veterans Court's conclusion as to the due process allegation. She contends that a constitutional challenge is special and simply is not subject to the rule against successive allegations of CUE in the same underlying Board decision. We see no sound basis for adopting the suggested exception.

In *Cook*, the en banc court held that the principles of finality and res judicata generally apply to a claim determination by the VA. 318 F.3d at 1336–37; *see Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) ("We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality."). Congress may create exceptions to the finality of a claim determination, as it did for Board determinations upon a showing of (1) new and material evidence, 38 U.S.C. § 5108, or (2) CUE, *id.* §§ 5109A, 7111. But the court explained in *Cook* that there is no "third exception" even for "grave procedural error." 318 F.3d at 1337, 1340–41, 1341 n.9.[4]

---

[4]    The final VA claim determination at issue in *Cook* was that of a regional office, because the claimant in that case did not appeal the regional office's determination. 318 F.3d at 1335–36. But the reasoning in *Cook* applies equally to a final determination of the Board. *See id.* at

Adopting Mrs. Garcia's proposal to exempt procedural constitutional challenges from all CUE constraints, even those concerning timing, would run counter to *Cook*'s rulings. Mrs. Garcia has not established any inherent limitation on "finality" applicable here or the availability of a procedural vehicle other than a CUE motion as a basis for her assertion. (She does not argue new and material evidence.) And we need not explore the broad question whether, after *Cook*, there could be a constitutional basis for allowing presentation of some due process allegations to revise otherwise-final VA decisions without proceeding by way of a CUE motion or a motion based on new and material evidence. Even if there could be, which we need not say, there is no such basis in this case for overriding the CUE regulation on timely presentation of challenges. The particular due process challenge at issue here was readily available to Mr. Garcia at the time of the 2008 CUE challenge. We see no constitutional difficulty in the regulation's channeling of an available CUE challenge on this basis to the initial CUE motion, with CUE relief on this basis not thereafter available. *See United States v. Mezzanatto*, 513 U.S. 196, 200–01 (1995) (constitutional arguments may be waived); *Singleton v. Shinseki*, 659 F.3d 1332, 1334 n.2 (Fed. Cir. 2011) (same).

Mrs. Garcia contends that this court's decision in *Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009), issued several years after *Cook*, suggests that *Cook* is no longer good law. The court in *Cushman* reviewed a collateral challenge to a VA claim determination and concluded

---

1337 (noting the same two statutory exceptions apply to the finality of decisions by the Secretary and by the Board); *id.* at 1339 (explaining the purpose of the rule of finality and Congress's understanding of that rule in enacting the statutes codifying CUE challenges to both Secretary and Board determinations).

that the presentation of an improperly altered medical record in the original agency proceeding violated the veteran's constitutional right to due process. *Id.* at 1291. In assessing that claim, the court stated that it "ha[d] jurisdiction and authority to consider a free-standing constitutional issue independently from the CUE framework typically applicable to appellate review of veterans' claims." *Id.* at 1296 (citing *In re Bailey*, 182 F.3d 860, 869–70 (Fed. Cir. 1999)).

We do not read that statement to mean what Mrs. Garcia urges—that a constitutional challenge is generally free of the regulatory timely-presentation limits that channel CUE challenges as an exception to finality principles. Most specifically, the statement does not address timely-presentation limits. That is not surprising: there was no timeliness issue in *Cushman*. The court observed that "[i]t [was] not disputed that [Mr. Cushman's] free-standing due process claim was timely raised." *Id.* at 1298 n.2; *see also id.* at 1294 (noting statement by government counsel in earlier proceeding that "Mr. Cushman would be free to raise those claims [including the due process claim] before the Board").

Beyond that, nothing in *Cushman* addresses or seeks to distinguish (much less purports to modify) *Cook*'s en banc ruling as to the limited avenues for collateral attacks on otherwise-final VA claim determinations. There was no issue about Mr. Cushman having proceeded outside the authorized avenues: Mr. Cushman raised his due process contention within a CUE challenge that the government accepted as proper. *Id.* at 1294. The court's citation to *In re Bailey* for the reference to a "free-standing constitutional issue" merely pointed to *Bailey*'s characterization of such an issue as "one not also involving a challenge to the interpretation or validity of a statute or regulation" but that "otherwise meets the limitations of the jurisdictional statute [38 U.S.C. § 7292]." *Bailey*, 182 F.3d at 869–70. The court later

noted Mr. Cushman's argument "that the burdens of proof applicable to CUE claims do not apply to his free-standing due process claim" and "agree[d] that the burdens of proof typically applicable to due process claims also apply to such claims raised in the context of veteran's benefits." *Cushman*, 576 F.3d at 1299 n.3. But that statement requires no more than applying the normal constitutional "burdens of proof" for disturbing the results of an adjudication based on due process defects, even when the issue is raised within a CUE challenge. It does not question the rules that channel such collateral challenges within defined limits where, as here, there is no separate due process problem with adhering to those limits.

For those reasons, we reject Mrs. Garcia's challenge to the Veterans Court's application of 38 C.F.R. § 20.1409(c) to bar her due process allegation of CUE.[5]

2

As for the CUE allegation based on Mrs. Garcia's 2004 testimony, Mrs. Garcia makes just one argument: that this allegation was actually presented in the initial CUE motion. She relies on that motion's statement that the "[c]orrect facts were not before the Board in 2004 and 2006." J.A. 71.

---

[5] The government argues that *Andre*, 301 F.3d 1354, separately deprived the Veterans Court of jurisdiction over Mrs. Garcia's due process claim. We do not reach that argument. The Veterans Court decision before us does not rely on *Andre*, and we affirm based on the § 20.1409(c) ground on which the Veterans Court relied. We note that, as this court explained in *Hillyard*, the *Andre* case did not involve § 20.1409(c) or a CUE challenge to a Board decision, but instead involved a CUE challenge to a regional office decision, to which § 20.1409(c) does not apply. *Hillyard*, 695 F.3d at 1260.

This argument, however, is a challenge to the Veterans Court's factual determination that the particular allegation of CUE—this one not a constitutional challenge—was omitted from the initial CUE motion, having been presented only in July 2010 on a motion to reconsider the Board's April 2010 denial of the motion. *Garcia*, 29 Vet. App. at 54. We do not have jurisdiction to review that factual determination regarding a non-constitutional issue. *See* 38 U.S.C. § 7292(d)(2)(A); *Comer v. Peake*, 552 F.3d 1362, 1372 (Fed. Cir. 2009) ("Whether a veteran has raised a particular [CUE challenge] is a factual determination, outside the purview of our appellate authority."); *see also Kernea v. Shinseki*, 724 F.3d 1374, 1382 (Fed. Cir. 2013) (no jurisdiction to consider whether claimant raised a valid CUE challenge because that "would require us to review and interpret the contents of her [CUE motion]"). We have before us no challenge to the application of § 20.1409(c) to bar the allegation regarding Mrs. Garcia's 2004 testimony if we accept, as we must, the Board's factual findings about when that allegation was first presented.

## III

We therefore affirm the Veterans Court's decision.

## AFFIRMED

### Costs

No costs.