NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARSHALL JACKSON,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-2366

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 22-4371, Judge Joseph L. Falvey, Jr.

---

Decided:  April 7, 2025

---

J. BRYAN JONES, III, J B Jones III LLC, Lafayette, LA, argued for claimant-appellant.

DANIEL FALKNOR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee.  Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY.

---

Before TARANTO and HUGHES, *Circuit Judges*, and
BARNETT, *Judge*.[1]

TARANTO, *Circuit Judge*.

Marshall Jackson left active military service in 1974. In 1992, he filed a claim with the U.S. Department of Veterans Affairs (VA), under 38 U.S.C. § 1110, seeking benefits for assertedly service-connected left-knee and neck conditions, but the relevant regional office of VA denied the claim in 1993. In August 2021, Mr. Jackson filed a supplemental claim with VA alleging "clear and unmistakable error" (CUE) in the 1993 decision under 38 U.S.C. § 5109A. After the regional office denied the CUE claim, the Board of Veterans' Appeals affirmed that denial, while also granting benefits for service-connected left-knee and neck conditions, citing evidence submitted with the 2021 supplemental claim. J.A. 5–11 (Board opinion). The U.S. Court of Appeals for Veterans Claims (Veterans Court) affirmed the Board's denial of the CUE claim. *Jackson v. McDonough*, No. 22-4371, 2023 WL 4623029, at *1 (Vet. App. July 19, 2023) (*2023 Decision*). We now dismiss Mr. Jackson's appeal, given the limited arguments he has presented and properly preserved.

I

Mr. Jackson served on active duty in the U.S. Army from September 1972 to September 1974. J.A. 28. In October 1992, he filed a claim seeking disability benefits for a left-knee condition and a neck condition. J.A. 28–30. He underwent a VA medical examination on November 5, 1992. J.A. 34. The VA examining physician reported statements by Mr. Jackson about injuries during his active service: (1) "[W]hile running [Mr. Jackson] hurt his left knee

---

[1]    Honorable Mark A. Barnett, Chief Judge, United States Court of International Trade, sitting by designation.

and was told that he pulled a ligament" and "now off and on his left knee feels numb and gives away"; (2) "[Mr. Jackson] strained something in his neck picking up boxes in the supply room" and was later told by "doctors [that] he had sprained his neck, had pulled a muscle[,]" and—after the pain got "worse in 1975 or 1976"—"had arthritis of C5 and C6." J.A. 34. The examining physician also provided a "[d]iagnosis impression" in the report of "[p]ost traumatic arthritis of the cervical spine and the left knee." J.A. 37.

In April 1993, the relevant VA regional office denied Mr. Jackson's claim. J.A. 27–33. The rating decision stated that "[t]he service medical records are negative for complaint of or treatment for" the left-knee injury and neck injury and that "the cited evidence of record does not establish that the currently diagnosed traumatic arthritis" of the left knee and cervical spine "was manifested to a compensable degree within one year of [Mr. Jackson's] discharge from service." J.A. 33; *see also* J.A. 29. Mr. Jackson initiated but did not perfect an appeal, so the 1993 decision became final. J.A. 5; *see also* 38 U.S.C. § 7105(c).

On August 11, 2021, Mr. Jackson filed with VA a supplemental claim seeking revision of VA's 1993 denial of benefits for the two conditions, contending that the denial rested on "clear and unmistakable error." J.A. 22–26; *see also* 38 U.S.C. § 5109A; 38 C.F.R. § 3.105. In the VA form used for the filing, specifically in the section on "new and relevant evidence," Mr. Jackson indicated that VA could get records from the VA Medical Center in Alexandria. J.A. 24. Mr. Jackson underwent a medical examination in September 2021, and the examining physician reported that Mr. Jackson stated that he sustained a neck injury after picking up boxes and a left-knee injury after physical training. J.A. 10. The examining physician diagnosed Mr. Jackson with osteoarthritis in his left-knee joint and degenerative arthritis in his cervical spine but stated that his conditions were "less likely as not related to military service." J.A. 19–20.

In mid-November 2021, the VA regional office decided that the 1993 denial of compensation for left-knee injury with traumatic arthritis and for neck injury with traumatic arthritis of the cervical spine "is not considered to have been clearly and unmistakably erroneous because the decision was properly based on the available evidence of record at the time," which "does not show that [Mr. Jackson's] condition is related to military service," and "the rules then in effect." J.A. 17–20 (citing 38 C.F.R. § 3.105). But the regional office went on to state that Mr. Jackson had submitted "new and relevant evidence," and it therefore construed his 2021 supplemental claim as a new claim and reconsidered granting service-connected benefits based on that claim. J.A. 19–20 (citing 38 C.F.R. § 3.2501); *see* 38 U.S.C. § 5108. Based on the September 2021 examination, VA determined that "the evidence of record does not show that" the conditions at issue were "related to military service." J.A. 19–21 (citing 38 C.F.R. §§ 3.303–3.304, 3.307, 3.309).

Mr. Jackson appealed to the Board, J.A. 12–13, and on April 19, 2022, the Board issued its opinion. J.A. 5–11. The Board first rejected the claim of CUE in the 1993 rating decision. J.A. 7–9. At the time of that rating decision, the Board explained, "the record was unclear as to whether [Mr. Jackson's] neck and left knee condition was related to service" because the service treatment records did "not show neck or left knee related complaints," he "separated service without neck or left knee issues," he "did not file a claim until almost 2-decades after separating from service," the "first account of left knee issues in medical evidence of record" was in 1978, and the November 1992 examiner's diagnosis was "up for interpretation . . . as [to] whether this means the conditions started during service or not." J.A. 8–9. Because his "conditions at the time of the April 1993 rating decision can be construed as not service related" and "a reasonable adjudicator could have determined" that his injuries "did not warrant a service connection [finding] at the time," the Board concluded, Mr.

Jackson "ha[d] not met the heavy burden required to support a CUE claim." J.A. 9.

Having completed its consideration of the CUE issue, the Board then "liberally construe[d]" Mr. Jackson's appeal also to seek review of the regional office's decision not to grant benefits based on the 2021 supplemental claim. J.A. 7. On this issue, the Board concluded that "persuasive evidence," including evidence post-dating the 1993 decision, justified finding service connection for degenerative arthritis of the cervical spine and osteoarthritis of the left knee, citing the benefit-of-the-doubt rule. J.A. 10–11 (citing 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102). Mr. Jackson thus could receive disability benefits for the at-issue conditions from a time based on his 2021 supplemental claim, 38 U.S.C. § 5110(a), but not back to his 1992 claim (which he sought to obtain under the effective-date provision for successful CUE claims, 38 U.S.C. § 5109A(b)).

Mr. Jackson timely appealed the adverse aspect of the Board's decision (denying CUE relief) to the Veterans Court. He argued that the Board erroneously concluded that the record was unclear at the time of the 1993 decision and that VA legally erred in failing to address whether his conditions were connected to service on a direct basis. J.A. 42–45. This asserted failure was outcome determinative, he argued, because VA, had it addressed that issue, would have had to find service connection by applying the duty to give the veteran the "benefit of the doubt." J.A. 42–45 (citing 38 C.F.R. § 3.102); *see* 38 U.S.C. § 5107(b) (directing the Secretary to give the "benefit of the doubt" to a claimant when "there is an approximate balance of positive and negative evidence" on an issue material to the determination of a matter) (current version, which has not changed relevantly since the 1993 VA decision).

On July 19, 2023, the Veterans Court affirmed the Board's finding that the 1993 rating decision did not contain clear and unmistakable error, *2023 Decision*, at *1, *3,

noting that it was not disturbing the Board's favorable findings of service connection for neck and left-knee disabilities based on the 2021 supplemental claim, *id.* at \*1 n.1. Mr. Jackson's argument, the Veterans Court explained, amounted to a disagreement with how VA evaluated and weighed the evidence, which cannot be the basis for a claim of clear and unmistakable error. *Id.* at \*2. Furthermore, the Veterans Court noted Mr. Jackson's argument that VA would have had to resolve the claim in his favor given the benefit-of-the-doubt rule. *Id.* But the court did not make or review any determination about whether the evidence in 1993 was in such approximate balance, *i.e.*, in equipoise; rather, it concluded that, to establish CUE, "it is not enough to show that the evidence was in relative equipoise." *Id.*

The Veterans Court's decision became final on August 10, 2023, and Mr. Jackson timely appealed a week later.

## II

Our authority to review decisions by the Veterans Court is "limited by statute." *Perciavalle v. McDonough*, 101 F.4th 829, 835 (Fed. Cir. 2024); *see generally* 38 U.S.C. § 7292. As relevant in this non-constitutional case, for us to have jurisdiction, we need to be presented with an argument that the "Veterans Court decision may have rested on an incorrect rule of law." *Martin v. McDonald*, 761 F.3d 1366, 1369 (Fed. Cir. 2014) (citing *Colantonio v. Shinseki*, 606 F.3d 1378 (Fed. Cir. 2010)); *see Acree v. O'Rourke*, 891 F.3d 1009, 1015 (Fed. Cir. 2018) (same). What is required is the Veterans Court's express or implicit reliance on a legal conclusion that an appellant in this court identifies. *Smith v. Collins*, 130 F.4th 1337, 1343 (Fed. Cir. 2025) (express or implicit reliance on the asserted error needed for our jurisdiction); *see Taylor v. McDonough*, 71 F.4th 909, 924–25 (Fed. Cir. 2023). We lack authority to review the Veterans Court's factual determinations or applications of law to the facts of a particular case. *See Perciavalle*, 101

F.4th at 835; 38 U.S.C. § 7292(d)(2).   Where the decision may have rested on a legal error, we may vacate the decision and remand for further proceedings on the issue.  *See Acree*, 891 F.3d at 1015; *Colantonio*, 606 F.3d at 1382.

A

In his opening brief in this court, one of Mr. Jackson's two arguments is that, in ruling on the CUE claim, the Veterans Court (and Board) departed from a requirement—for which Mr. Jackson relies chiefly on our decision in *Moody v. Principi*, 360 F.3d 1306 (Fed. Cir. 2004)—that the evidence underlying the 1993 decision be given a sympathetic reading, even in assessing CUE.  Opening Br. at 1, 12–16. But the Veterans Court nowhere articulated a legal standard inconsistent with that requirement.  And its decision does not necessarily imply its adoption of such a standard. The evidence of significance was two-fold: (a) the November 1992 medical-examination report, which simply reported what Mr. Jackson stated about in-service events and noted the absence of further details, J.A. 34; and (b) the regional office's 1993 decision finding that there was no service connection, for which the regional office recited that the actual in-service medical records were "negative for complaint of or treatment for" the at-issue left-knee and neck conditions, and its finding that "nor" was there sufficient manifestation within a year of service to warrant an inference of service connection, J.A. 33.   The Veterans Court (and Board) could find that the 1993 denial on this evidence was proper even on a sympathetic reading.  Accordingly, the sympathetic-reading argument by Mr. Jackson in this court amounts to disagreement over an application of law to fact, which provides no basis for this court's jurisdiction under § 7292.

B

Mr. Jackson's second argument in his opening brief is that the Board's 2022 granting of benefits for the left-knee and neck conditions necessarily establishes CUE of the

regional office's 1993 decision denying benefits for the same conditions, because there was no material difference between the evidence before the Board in 2022 and the evidence before the regional office in 1993. Opening Br. at 1, 4–6, 10–12; *see* Secretary Br. at 11, 14 (recognizing inconsistency-based argument). Mr. Jackson's premise of no material difference in evidence is not one that the Veterans Court's opinion addresses.[2] On Mr. Jackson's premise, this inconsistency-based argument is on its face an assertion of legal error that, if corrected, could well alter the result of the Veterans Court's decision, and it might therefore support jurisdiction here.

Even if so, there is a separate problem with this argument. We follow a strong (non-jurisdictional) rule of forfeiture of arguments not presented to the Veterans Court, at least in cases where the veteran had counsel in that court. *See Smith*, 130 F.4th at 1344 n.2 (citing cases); *Gurley v. McDonough*, 23 F.4th 1353, 1357 (Fed. Cir. 2022) (citation omitted). That rule, we hold, bars Mr. Jackson's inconsistency-based argument.

Mr. Jackson's inconsistency-based argument does not appear in Mr. Jackson's brief to the Veterans Court. J.A. 38–46. Nor does it appear in his June 27, 2023 submission made in response to the Veterans Court's request for the parties to be specific about the CUE claims at issue. Appellant's Response to the Court's May 31, 2023 Order, *Jackson v. McDonough*, No. 22-4371 (Vet. App. June 27,

---

[2]    The regional office in 2021 stated that there was "new and relevant evidence," allowing it to consider the left-knee and neck claims again, J.A. 19–20, and the Board noted that the regional office had so found, J.A. 6. We understand Mr. Jackson to be asserting that, even if there was "new and relevant" evidence in 2021, it was not materially different in substance from the evidence on the service-connection issue before the regional office in 1993.

2023). Nor, finally, does the Veterans Court's opinion address this inconsistency-based argument. The Veterans Court's observation about equipoise is not itself a ruling on inconsistency between the Board's 2022 grant and the regional office's 1993 decision. *See 2023 Decision*, at *2. There is, accordingly, a forfeiture here.

There is good reason to follow the normal course of enforcing the forfeiture rule. The Veterans Court could play a significant role in clarifying the relationship between the Board's later grant of benefits and the determination of CUE in the regional office's much earlier denial. Particularly for CUE, where specificity of the asserted bases of error has long been required, *cf. Johnston v. Nicholson*, 421 F.3d 1285, 1287–88 (Fed. Cir. 2005) (elaborating on requirement in context of presentation to the Board), we will not overlook the absence of the present argument from Mr. Jackson's submissions to the Veterans Court.

C

After briefing was complete in this appeal, this court issued a nonprecedential decision in *Baker v. McDonough*, 2024 WL 5165632 (Fed. Cir. Dec. 19, 2024). There, we held that, in assessing a CUE challenge to a 1992 VA decision, the Board was legally required to determine whether the evidence underlying the challenged decision was "undebatably in equipoise," because if it was, "[i]t is undebatable that [VA] was required to find in [the veteran's] favor" in 1992. *Id.* at *2–3. The *Baker* decision thus runs counter to any reading of the Veterans Court's statement about equipoise, *2023 Decision*, at *2, that would preclude a finding of CUE from ever resting on a determination that the evidence underlying the challenged decision was in approximate balance. *Baker*, being nonprecedential, is not binding for other cases, but we often attend to statements of legal principle in nonprecedential decisions, as does the Secretary, who regularly cites such decisions. *See, e.g.*, Secretary Br. at 14, 15, 27.

Mr. Jackson, despite having made some reference to equipoise before the Veterans Court (as is evident from the Veterans Court's opinion), did not present such an argument to this court in his opening brief. After oral argument, we directed the parties to address *Baker*. Order (Mar. 5, 2025), ECF No. 43. In his response, Mr. Jackson presented an argument for setting aside the Veterans Court decision here in light of *Baker*. Supplemental Memorandum in Support of Marshall Jackson (Mar. 18, 2025), ECF No. 45. The Secretary filed a response, Government Letter (Mar. 12, 2025), ECF No. 44, in which, among other things, he contended that Mr. Jackson forfeited (waived) such an argument in the present appeal by not including it in his opening brief, *id.* at 3; that *Baker* would not support a finding of CUE in the 1993 decision for several case-specific reasons, *id.* at 4–6; and, importantly, that Mr. Jackson "can submit a CUE claim pleading [the benefit-of-the-doubt rule] with specificity for a regional office to consider in the first instance," *id.* at 3 (citing 38 U.S.C. § 5109A(d), and *Andrews v. Nicholson*, 421 F.3d 1278, 1284 (Fed. Cir. 2005)). *See also* 38 C.F.R. § 3.105(a)(1).

We may assume that we have some discretion to consider late-presented arguments, including for intervening developments of law. *Cf. Celgene Corp. v. Peter*, 931 F.3d 1342, 1356 (Fed. Cir. 2019) (so indicating in context of failure to present argument in tribunal under review); *Harris Corp v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005) (similar). But we will not do so here. This is not a case simply of new authority on what amounts to much the same argument as the one timely made; nor is it a case in which the merits of the newly presented argument are obvious even without new factual development or factfinding. Crucially, moreover, we rely on the Secretary's insistence that Mr. Jackson is free to present a new CUE claim based on the benefit-of-the-doubt rule and *Baker*, by which we understand the Secretary to mean that VA will ensure that Mr. Jackson can pursue that course without any loss of

merits-consideration rights. *See, e.g.*, *Andre v. Principi*, 301 F.3d 1354, 1361–62 (Fed. Cir. 2002) (explaining that a veteran may present a new claim that makes allegations, not raised before the Board or Veterans Court, of CUE in a regional office's decision); *Garcia v. Wilkie*, 908 F.3d 728, 737 n.5 (Fed. Cir. 2018). The various issues raised by such a claim call for close, record-specific analysis. We conclude that the issues are best and properly developed through the presentation and adjudication of a new CUE claim. In that process, Mr. Jackson and VA will, among other things, be able and obliged to take due account of another new development, *i.e.*, the Supreme Court's recent decision in *Bufkin v. Collins*, 604 U.S. ___, 145 S. Ct. 728 (2025).

## III

For the foregoing reasons, we dismiss Mr. Jackson's appeal from the Veterans Court's decision.

The parties shall bear their own costs.

**DISMISSED**