**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 06-3600

HENRY L. GARDNER, APPELLANT,

v.

ERIK K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans Appeals

(Argued December 4, 2008          Decided  March 13, 2009)

*Michael R. Viterna*, of Northville, Michigan, for the appellant.

*Robert Schneider*, with *Richard Mayerick*, Deputy Assistant General Counsel, *R. Randall Campbell*, Assistant General Counsel, *Paul J. Hutter*, General Counsel, all of Washington, D.C., for the appellee.

*Before* GREENE*, Chief Judge,* HAGEL *and* MOORMAN*, Judges.*

GREENE, *Chief Judge*:  Henry L. Gardner appeals, through counsel, a December 11, 2006, decision of the Board of Veterans' Appeals (Board) that found that the character of his discharge from service barred him from receiving VA compensation benefits.  Record (R.) at 1-12.  Mr. Gardner argues that in making that finding, the Board failed to provide an adequate statement of reasons or bases for its determination that he was not insane at the time that he committed the offenses that led to his discharge.  For the reasons that follow, the December 2006 Board decision will be vacated and the matter remanded for readjudication.

**I. FACTS**

Mr. Gardner served in the U.S. Marine Corps from July 1967 to January 1972, including service in Vietnam.  R. at 16.  On August 19, 1968, he was convicted by general court-martial for being absent without leave on several occasions from May through July of 1968.  R. at 103-04, 119. While incarcerated in the Da Nang prison in Vietnam, Mr. Gardner was involved in a prison riot that

occurred between August 16 and 18, 1968.  *See* R. at 72-73, 107, 111.  On January 30, 1969, he was again court-martialed and charged with inciting a riot, participating in a mutiny, and committing an assault.  R. at 111.  He was deemed to have the requisite mental capacity, found guilty, and sentenced to three years confinement at hard labor, forfeiture of all pay and allowances, and a dishonorable discharge.  R. at 111-30.  In March 1969, he was transferred to the Naval Disciplinary Command in Portsmouth, New Hampshire.  R. at 70.  In April 1969, he underwent neuropsychiatric screening that revealed no evidence of psychosis or neurosis and he was diagnosed with having a sociopathic personality.  R. at 48.  In June 1969, his sentence in the second court-martial was approved by the commanding general and in December 1969, the Navy Court of Military Review affirmed that conviction and sentence.  R. at 106-110.  In February 1970, the U.S. Court of Military Appeals denied Mr. Gardner's petition for review.  R. at 94.

While confined in New Hampshire, in December 1970, Mr. Gardner was charged with lifting a weapon against a superior officer, refusing to obey an order, unlawful assembly, willful disobedience, assault, and communicating a threat.  R. at 90-91.  Mr. Gardner was examined by a Mental Competency Board (MCB) in February 1971 concerning his mental state at the time of these offenses and his ability to stand trial by general court-martial.  He was found to be "competent to stand trial, capable of aiding in his own defense and mentally responsible for the offenses charged against him."  R. at 62.  In April 1971, he was convicted by general court-martial on four charges and again received a dishonorable discharge and an additional two years confinement at hard labor.  *See* R. at 91.  In July 1971, it was reported that he had remained uncontrollable since the time of his court-martial and had exhibited a mental status consistent with a psychotic thought process.  R. at 72.  He was diagnosed with having schizophrenia, schizo-affective type, and transferred to the U.S. Naval Hospital in Philadelphia, Pennsylvania, for treatment.  R. at 70, 72.  After evaluation and treatment, psychiatrists at the U.S. Naval Hospital opined that Mr. Gardner was schizophrenic and recommended against further disciplinary confinement and in favor of hospitalization.  R. at 85.  In December 1971, the General Court-Martial Convening Authority, then having jurisdiction over Mr. Gardner, issued an Action of the Convening Authority that stated in part:

> [I]n view of the Naval Hospital, Philadelphia, Pennsylvania, Medical Board's finding that the accused's mental state had deteriorated subsequent to trial to the point of

mental incompetency and the concomitant difficulty in executing the sentence, [the sentence] is disapproved in toto.

R. at 92. Mr. Gardner's DD 214 reflects that he was discharged in January 1972 "under conditions other than honorable" and that he received a DD Form 260.[1] R. at 17.

In April 1974, Mr. Gardner claimed VA service connection for a mental illness. R. at 214-17. In November 1974, a VA regional office (RO) denied his claim after finding that his character of discharge barred him from receiving VA benefits. R. at 239. Mr. Gardner did not appeal and that decision became final. *See* R. at 1-1398.

Mr. Gardner claimed VA service connection several times between May 2000 and January 2003. R. at 249-52, 294, 312, 316-17, 324, 389-97, 870. In June 2003, the RO found that new and material evidence had not been submitted to reopen his previously and finally denied claim. R. at 437-38. Mr. Gardner appealed that decision and, after a remand for further development, the Board found that his testimony that he was insane when committing his offenses in Vietnam and while in confinement in New Hampshire was new and material evidence sufficient to reopen his previously denied claim. R. at 10. After overturning the RO's determination that new and material evidence had not been submitted, the Board reopened Mr. Gardner's claim for compensation, but denied it on the merits, concluding that "the evidence of record does not establish that the appellant was insane, as that term is defined by applicable regulation, at any time during his military service," and thus, his discharge still remained a bar to his receiving VA benefits.[2] R. at 11. This appeal followed.

## II. ARGUMENTS

Mr. Gardner argues that the Board's statement of reasons or bases for its determination that he was not insane at the time he committed the offenses that led to his discharge is inadequate because the Board failed to apply the VA standard for determining insanity set out in 38 C.F.R.

---

[1] Prior to 2003, DD-260 was the form number for a dishonorable discharge certificate from service in the U.S. Navy or Marine Corps. *See generally* 10 U.S.C. § 1168.

[2] The Court notes that this action is permitted under this Court's decision in *Bernard v. Brown*, 4 Vet.App. 384, 390-92 (1993). However, the decision of the U.S. Court of Appeals for the Federal Circuit in *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1346-48 (Fed. Cir. 2003) calls into question the ability of the Board to reopen a claim and decide the matter on the merits without remanding the claim to a regional office for a decision on the merits in the first instance. Because neither party raised this issue, however, the Court will not address it.

§ 3.354(a) and did not address whether VA should have assisted him in this determination by providing him a medical opinion under 38 U.S.C. § 5103A. Appellant's Brief (Br.) at 14, 17. The Secretary asserts that the Board found that there was no evidence that Mr. Gardner was insane due to disease nor evidence that he did not know or understand the nature of his actions and that these findings are the "touchstones" of the § 3.354(a) insanity definition. Secretary's Br. at 10. Additionally, the Secretary maintains that VA had no duty to assist Mr. Gardner because he has not established veteran status and that the evidence of record provided the Board with a plausible basis for its decision. *Id.* at 13-14.

### III. LAW AND ANALYSIS
#### A. Character of Discharge and Insanity Determinations

"In order to qualify for VA benefits, a claimant . . . or the party upon whose service the claimant predicates the claim . . . [must be] a 'veteran.'" *Cropper v. Brown*, 6 Vet.App. 450, 452 (1994); *see D'Amico v. West*, 209 F.3d 1322, 1327 (Fed. Cir. 2000). A veteran is defined as "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101(2); *see* 38 C.F.R. § 3.1(d) (2008). Additionally, the receipt of a discharge from a sentence of a general court-martial usually bars entitlement to VA benefits. *See* 38 U.S.C. § 5303; 38 C.F.R. § 3.12 (2008). However, subparagraph (b) of section 5303 states:

> [I]f it is established to the satisfaction of the Secretary that, at the time of the commission of an offense leading to a person's court-martial, discharge, or resignation, that person was insane, such person shall not be precluded from benefits under laws administered by the Secretary.

38 U.S.C. § 5303(b); *see* 38 C.F.R. § 3.12(b) (implementing regulation). Under VA regulation, the Secretary has defined an insane person as one

> who, while not mentally defective or constitutionally psychopathic, except when a psychosis has been engrafted upon such basic condition, exhibits, due to disease, a more or less prolonged deviation from his normal method of behavior; or who interferes with the peace of society; or who has so departed (become antisocial) from the accepted standards of the community to which by birth and education he belongs as to lack the adaptability to make further adjustment to the social customs of the community in which he resides.

4

38 C.F.R. § 3.354 (a) (2008); *see Zang v. Brown*, 8 Vet.App. 246, 253 (1995) (stating that phrase "due to disease" applies to all three circumstances provided in § 3.354(a)); *see also* VA Gen. Coun. Prec. 20-97 (May 22, 1997) (clarifying VA's definition of insanity). Although insanity need not be causally connected to the misconduct that led to the discharge, it must be concurrent with that misconduct and requires competent medical evidence to establish a diagnosis. *See Beck v. West*, 13 Vet.App. 535, 539 (2000); *Zang*, 8 Vet.App. at 254-55; 38 C.F.R. § 3.354(a).

When determining whether a veteran was insane at the time of a committed offense, the rating agency will "base its decision on all the evidence procurable relating to the period involved." 38 C.F.R. § 3.354(b). The Court reviews the Board's factual decision in this regard under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *see Beck*, *supra*; *Gilbert v. Derwinski*, 1 Vet.App. 49, 52-53 (1990). Further, the Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 57.

Here, the Board concluded that "the evidence of record does not establish that the appellant was insane, as that term is defined by applicable regulation, at any time during his military service." R. at 11. In support of this conclusion, the Board found that while Mr. Gardner's offenses "clearly interfered with the peace of society, the contemporaneous medical records shortly following the incident show that his behavior was attributed to a personality disorder, with no reference to an inability to discern the effects of his behavior." *Id*. Additionally, the Board determined that "there is no indication that [Mr. Gardner]'s behavior at the time of his offenses resulted from any disease which placed [his] mental capacity beyond his control." *Id*.

A review of the record reveals that the Board has misapplied the definition of insanity contained in § 3.354(a). Notably, the Board considered whether Mr. Gardner was able to discern the effects of his behavior and whether any disease placed his mental capacity beyond his control. R. at 11. Although these elements are common components of insanity definitions used in criminal cases, as described by the Model Penal Code (MPC) and the Uniform Code of Military Justice, such elements are absent from the VA regulatory definition of insanity. *Compare* 38 C.F.R. § 3.354(a)

5

*with* 10 U.S.C. § 850(a); *see also United States v. Martin*, 56 M.J. 97, 103 (2001). In *Zang*, this Court included an analysis of the MPC definition of insanity because the issue on appeal in that case required a determination as to whether the veteran's death was a result of insanity *or* a result of willful misconduct. 8 Vet.App. at 252 (citing *United States v. Brawner*, 471 F.2d 969, 991 (D.C. Cir. 1972) (en banc) (adopting MPC definition of insanity for insanity defense in criminal prosecutions that require showing of inability to control behavior and showing that defendant could not appreciate that his or her conduct was wrongful)); *see* 38 U.S.C. § 1110 (VA compensation barred for disability resulting from willful misconduct). This was appropriate because, unlike VA's insanity regulation, a finding of willful misconduct requires an intentional act. *See* 38 C.F.R. § 3.1(n) (Willful misconduct is "an act involving conscious wrongdoing or known prohibited action[;] . . . [i]t involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences."). Here, the Board's analysis of whether Mr. Gardner understood right from wrong and whether he was able to discern the effects of his behavior is not germane to a determination of whether he was insane during his service as defined by 38 C.F.R. § 3.354(a).[3] Accordingly, the Board erred when it relied upon elements of the MPC definition of insanity rather than analyzing the question of Mr. Gardner's sanity pursuant to the definition of insanity found in § 3.354(a). *See* 38 U.S.C. § 7104(c) (Board bound by VA regulations); *Douglas v. Derwinski*, 2 Vet.App. 435, 440 (1992) (en banc) (Board required to adhere to VA regulations).

Further, although the Board found that Mr. Gardner did not have a disease at the time of his offenses, *see Zang*, 8 Vet.App. at 253 (under § 3.354(a) insanity definition, actions must be "due to disease"), the Board failed to discuss the correct time frame for the offenses that led to Mr. Gardner's dishonorable discharge. The Board concluded that Mr. Gardner was not insane based on April 1969, January 1970, and August 1970 neuropsychiatric screenings that did not detect any acquired

---

[3]Indeed, the Secretary has previously been alerted that the inconsistency between the 38 C.F.R. § 3.354(a) (2008) definition of insanity and regulations governing willful misconduct illustrates a "'confusing tapestry' of VA regulations which should be the subject of review and reevaluation." *Zang*, 8 Vet.App. at 255(Steinberg, J., separate views). While the 1997 VA General Counsel opinion has reaffirmed VA's understanding of our holding in *Zang*, we see no evidence that VA has remedied the confusion we are again confronted with today. *See* VA Gen. Coun. Prec. 20-97. This is troubling given that this regulation was enacted as part of the complete revision of part 3 of regulatory section 38 in 1961, prior to the Model Penal Code's adoption by the American Law Institute in 1962. *See* 26 Fed. Reg. 1589 (Feb. 24, 1961).

psychiatric disorder or disease, and a February 1971 MCB evaluation that found that Mr. Gardner was free from mental defect, disease, or derangement at the time of his offenses and that he understood right from wrong. R. at 11, 48, 55, 63. However, none of these reports considers Mr. Gardner's mental state at the time he committed the offenses stemming from the August 1968 prison riot in Vietnam, for which he was court-martialed and received his dishonorable discharge.[4] Accordingly, the Board's reliance on these evaluations to find that Mr. Gardner was free from disease is insufficient to determine that he was not insane at the time he committed the offenses leading to his dishonorable discharge. *See Beck*, *supra*. As such, the Court cannot find that the Board's failure to correctly apply the § 3.354(a) definition of insanity is nonprejudicial to Mr. Gardner's claim. *See* 38 U.S.C. § 7261(b)(2) (Court "must take due account of the rule of prejudicial error"); *Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004).

Because of these inadequacies, we hold that the Board's statement of reasons or bases for its determination that the record does not establish that Mr. Gardner was insane at the time that he committed the offenses for which he was court-martialed in January 1969 and dishonorably discharged is inadequate to facilitate judicial review. *See* 38 U.S.C. § 7104(d)(1); *Allday*, and *Gilbert*, both *supra*. Consequently, the matter will be remanded for VA to gather all procurable evidence and apply the § 3.354(a) definition of insanity. *See Hatch v. Principi*, 18 Vet.App. 527, 532 (2004); *Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand appropriate when Board, inter alia, fails to provide adequate statement of reasons or bases).

### B. Duty to Assist

Initially, we reject the Secretary's argument that the duty to assist is not triggered until Mr. Gardner has met his burden of demonstrating veteran status.[5] Pursuant to the Veterans Claims

---

[4]A review of the 1971 Mental Competency Board findings reveals that its evaluation was limited to Mr. Gardner's mental state during the time he was at the Naval Disciplinary Command in Portsmouth, New Hampshire, from April 1969 through July 1971. R. at 63. The offenses he committed during that time period led to his third court-martial, the resulting sentence of which was "disapproved in toto" in December 1971. R. at 62-64, 92. Thus, the 1971 Mental Competency Board's evaluation is not relevant in determining Mr. Gardner's mental state during the offenses that led to his second court-martial in January 1969, the resulting sentence from which is the current potential bar to his eligibility for VA benefits.

[5]The Secretary has cited *Struck v. Brown*, 9 Vet.App. 145, 156 (1995) for the proposition that Mr. Gardner cannot be a claimant until he has established veteran status by a preponderance of the evidence. However, the burden to prove "veteran" status by a "preponderance of the evidence" is no longer controlling law. *See D'Amico*, 209 F.3d at 1326-27 (overruling *Laruan v. West*, 11 Vet.App. 80, 86 (1998) (en banc) and other cases holding that claimant must

Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, the Secretary has a duty to assist claimants. *See* 38 U.S.C. § 5103A. A "claimant" is "*any individual* applying for, or submitting a claim for, any benefit under the laws administered by the Secretary." 38 U.S.C. § 5100 (emphasis added). Accordingly, the Secretary's duty to assist applies to *all* claimants, regardless of whether they have established veteran status. *See Canlas v. Nicholson*, 21 Vet.App. 312 (2007) (Secretary's duty to assist applies to all five elements of claim, including verifying veteran status); *see also Capellan v. Peake*, 539 F.3d 1373, 1381 (Fed. Cir. 2008) (holding that veteran's military service must be determined based on all relevant evidence, "with due application of the duty to assist"); H.R. REP. NO. 106-781, at 9 (2000) (stating that purpose of defining "claimant" in section 38 U.S.C. § 5100 is to ensure that Secretary will provide assistance to persons whose status as veteran is not yet determined).

In this matter, the Board found that there was no prejudicial error in the development of Mr. Gardner's claim because "available service records and pertinent VA medical records have been obtained" and Mr. Gardner has not identified any records that VA failed to obtain. R. at 5. However, Mr. Gardner argues that VA should have obtained a medical opinion to determine whether his behavior during his 1968 offenses was due to schizophrenia and, if so, whether this constituted insanity under VA regulations given his lay statements, his medical diagnosis of schizophrenia in July 1971, and the fact that he was found mentally incompetent to serve his sentence by the General Court-Martial Convening Authority in December 1971. In light of this evidence, and because the duty to assist applies to a critical element of Mr. Gardner's claim, the Board should have considered whether a medical opinion was necessary to determine Mr. Gardner's mental state at the time of the August 1968 offenses that resulted in his dishonorable discharge. *See* 38 U.S.C. § 5103A(a)(2) and (d) (requiring VA to obtain medical examination or opinion "when such an examination or opinion is necessary to make a decision on the claim" but not if "no reasonable possibility exists that such assistance would aid in substantiating the claim").

The Board concluded that "there is no indication that [Mr. Gardner's] behavior at the time of his offense resulted from any disease which placed [his] mental capacity beyond his control." R. at 11. The Board acknowledged that Mr. Gardner's behavior clearly interfered with the peace of

---

show "veteran" status by preponderance of evidence before benefitting from statutes reserved for veterans).

8

society–which is one of the elements of the definition of insanity under § 3.354(a)–but found that "contemporaneous medical records shortly following the incident show that his behavior was attributed to a personality disorder." R. at 11. However, as noted above, the medical evaluations of record do not address Mr. Gardner's mental state during the time frame surrounding the *commission* of the August 1968 offenses for which he was tried by court-martial and sentenced to the dishonorable discharge that constitutes the current potential bar to VA benefits. There is no evidence referenced by the Board that counters Mr. Gardner's assertions that he was suffering from a mental disorder during the August 1968 prison riot in Da Nang, Vietnam, nor is there any discussion of the Board's effort to comply with the regulation requiring the Secretary to obtain all procurable evidence relating to the circumstances.[6] *See* R. at 1-12; 38 C.F.R. § 3.354(b). Accordingly, the Board's statement of reasons or bases for its conclusion that there has been no prejudicial error in the development of Mr. Gardner's claim is inadequate for judicial review. *See* 38 U.S.C. § 7104(d)(1); *Allday*, and *Gilbert*, both *supra*. Upon remand, if the Board determines that no medical examination or opinion is necessary to determine whether Mr. Gardner was insane at the time of the August 1968 offenses, it should expressly state its reasons for reaching that conclusion. *See Duenas v. Principi*, 18 Vet.App. 512, 517-18 (2004).

## IV. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the December 11, 2006, Board decision is VACATED and the matter is REMANDED for readjudication consistent with this decision.

---

[6] The Court notes that, although Mr. Gardner is not competent to diagnose his mental condition, *see Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992), having been so diagnosed, he may well be competent to describe symptoms similar to those that led to his current diagnosis of paranoid schizophrenia, *see Jandreau v. Nicholson*, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).