UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-5263

CHARLOTTE A. BOWLING, APPELLANT,

AND

No. 19-0602

KEVIN D. APPLING, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 18, 2020                                   Decided March 29, 2021)

*James D. Ridgway*, with whom *Glenn R. Bergmann* was on the brief, both of Bethesda, Maryland, for appellants.

*Shekeba Morrad* and *Christopher K. Bader*, with whom *Richard J. Hipolit*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Joan E. Moriarty*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for appellee.

Before BARTLEY, *Chief Judge*, and MEREDITH and FALVEY, *Judges*.

BARTLEY, *Chief Judge*: Appellant Charlotte A. Bowling is the surviving spouse of veteran Charles E. Bowling. She appeals, through counsel, a July 31, 2018, Board of Veterans' Appeals (Board) decision that determined, among other things, that Mr. Bowling's character of discharge for the period of service from November 3, 1965, to April 24, 1970,[1] was a bar to VA benefits for claims based on that service period. Bowling R. at 4-17.[2] Appellant Kevin D. Appling

---

[1] Mr. Bowling's initial period of service, from September 27, 1961, to November 2, 1965, was determined to be honorable. Bowling Record (R.) at 5012.

[2] In the July 2018 decision, the Board also denied Ms. Bowling's request to reopen her husband's previously denied claims for service connection for a back condition, ischemic heart disease, urinary incontinence, erectile dysfunction, peripheral neuropathy of the bilateral upper and lower extremities, and an acquired psychiatric disorder. Bowling R. at 17-20. The Board also denied initial claims for service connection for diabetes mellitus, bilateral hearing loss, tinnitus, hypertension, bowel incontinence, and sciatica of the bilateral lower extremities. Bowling R. at 20-32. To the extent that these determinations rest, at least in part, on the Board's determination as to Mr. Bowling's

appeals, through counsel, an October 10, 2018, Board decision that determined that his character of discharge was a bar to VA benefits. Appling R. at 4-8. These appeals are timely, and the Court has jurisdiction to review the Board decisions pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

Ms. Bowling's appeal was referred to a panel of the Court to address her argument that the definition of "insanity" in 38 C.F.R. § 3.354(a) is unconstitutional because it denies claimants due process of law. Bowling Brief (Br.) at 2, 4. Mr. Appling made an identical argument in his initial brief. Appling Br. at 2, 4.[3] In July 2019, the Court granted appellants' request that their appeals be consolidated for the purpose of addressing their common argument regarding the validity of § 3.354.

The Court holds that appellants have not met their burden to demonstrate that § 3.354(a) denies claimants due process or is constitutionally invalid. Therefore, the Court will affirm the October 10, 2018, Board decision concerning Mr. Appling. The Court will also affirm those portions of Ms. Bowling's July 31, 2018, Board decision that found that Mr. Bowling's character of discharge for his second service period was a bar to VA benefits, as well as, to the extent that the character of discharge decision is determinative, its decisions as to any of the 13 specifically claimed disabilities. The remainder of Ms. Bowling's appeal will be dismissed.

Additionally, there is a motion before the Court to "certify a class of veterans who have been or could yet be denied benefits based on VA's definition of 'insanity' as set forth in 38 C.F.R. § 3.354(a)." Motion for Class Certification (Motion) at 1. Because the Court accepts appellants' concession that their class action motion is moot if they do not prevail on the merits, the motion will be dismissed. However, if we were to decide the class action motion, we would deny it

character of discharge from his second period of service, those matters are inextricably intertwined with that issue. *See Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001) (explaining that, "in the interests of judicial economy and avoidance of piecemeal litigation," claims that are "intimately connected" should be adjudicated together); *Henderson v. West*, 12 Vet.App. 11, 20 (1998) ("[W]here a decision on one issue would have a significant impact upon another, and that impact in turn could render any review by this Court of the decision on the other [issue] meaningless and a waste of judicial resources, the two [issues] are inextricably intertwined." (internal quotations and alterations omitted)). To the extent that the matters were decided on other grounds, because Ms. Bowling has not raised any other challenge to those portions of the Board decision, the appeal as to those matters on any basis other than VA's definition of insanity will be dismissed. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued and dismissing that portion of the appeal); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same); *see also* Oral Argument (OA) at 49:51-49:56, *Bowling v. Wilkie*, U.S. Vet. App. No. 18-5263 (oral argument held June 18, 2020) (appellants' confirmation that they raised no argument with the denial of 13 claims based on Mr. Bowling's first period of service).

[3] The substantive arguments made in appellants' initial briefs are identical; they filed a joint reply brief. Going forward, the Court will cite to Ms. Bowling's brief in addressing the substantive arguments raised in appellants' initial briefs.

because appellants have not rebutted the presumption that a precedential decision would be adequate.

## I. FACTS

Appellants argue that the resolution of this appeal rests solely on the Court's evaluation of 38 C.F.R. § 3.354(a) and that the specific facts of their individual claims are irrelevant. *See* Appellants' Reply to Class Certification Motion at 14 (stating that "the facts of any individual case are irrelevant to the question in dispute" because "the issue before the Court is solely the legality of the insanity standard"). Nonetheless, the Court will summarize the most salient facts for each appellant.

### A. Mr. Bowling

Mr. Bowling served on active duty in the U.S. Marine Corps from September 1961 to April 1970. Bowling R. at 2426, 5034. During his initial, honorable period of service, Mr. Bowling was absent without leave (AWOL) for at least 32 days across three separate occasions. Bowling R. at 2318, 5016, 5034. He was convicted by special court-martial for 2- and 27-day AWOL periods in November and December 1964, but allowed to reenlist. Bowling R. at 2339-40, 2426, 5017.

During his second period of service, Mr. Bowling served in the Republic of Vietnam from June to October 1967. Bowling R. at 2261. After returning from Vietnam, Mr. Bowling had several additional periods of AWOL, including approximately 10 days in March 1968, for which he was convicted at a summary court-martial, Bowling R. at 2290, and for 133 days from September 24, 1969, to February 4, 1970, Bowling R. at 2328, 4227. In March 1970, Mr. Bowling requested discharge for the good of the service, acknowledging that, under Article 86 of the Uniform Code of Military Justice (UCMJ), his period of AWOL from September 1969 to February 1970 was triable by court-martial and punishable by a dishonorable discharge. Bowling R. at 4227. He was discharged in April 1970 under conditions other than honorable. Bowling R. at 2426.

In March 2007, Mr. Bowling requested, among other things, that VA reconsider his character of service for his second period of service, which it had previously determined was dishonorable for the purpose of VA benefits. Bowling R. at 4566-68; *see* Bowling R. at 5010. During the development of his claim and subsequent appeal, he obtained medical opinions from two private clinical psychologists. Bowling R. at 2561-67 (April 2012), 4336-54 (May 2008). The

first psychologist opined that Mr. Bowling had post-traumatic stress disorder (PTSD) related to his Vietnam service; that during his second period of service, his "mental state was such that he was not responsible for his actions at the time that he went AWOL;" that he "was unable to understand that he had other options than the one that he took;" and that "[a]vailable sources strongly indicate that he was [d]issociative at the time." Bowling R. at 4347-54. The second psychologist opined that Mr. Bowling was "experiencing a heightened level of [PTSD] symptoms" when he went AWOL in September 1969, and, as a result, "had diminished capacity regarding his decision[-]making ability." Bowling R. at 2566.

In October 2009, a VA examiner concurred that Mr. Bowling had PTSD related, in part, to his Vietnam service, R. at 3013, but opined that his AWOL event in September 1969 had "little connection" to "the distressing events of October 1967 in Vietnam." Bowling R. at 3017. Instead, the examiner attributed Mr. Bowling's AWOL events during his second period of service to his "excessive use of alcohol and associated frequent intoxication," as well as an underlying personality disorder resulting from childhood trauma. *Id.* at 3017.

In August 2012, the Board determined that the matter of Mr. Bowling's character of discharge from his second period of service should be reconsidered under 38 C.F.R. § 3.156(c) because additional relevant service records were associated with the claims file after the initial determination. Bowling R. at 2541. The Board also directed that, on remand, a VA examiner consider whether Mr. Bowling was insane for VA purposes, i.e., under 38 C.F.R. § 3.354(a), when he went AWOL in September 1969. Bowling R. at 2546-50. In May 2016, a VA examiner opined that there was "no indication that a psychiatric disability, other than alcohol abuse, existed at the time of the [September 1969] AWOL," and that it was "likely" that Mr. Bowling's excessive drinking, which began well before his deployment to Vietnam, significantly contributed to his lack of judgment. Bowling R. at 2251. Therefore, the VA examiner opined that Mr. Bowling's period of AWOL beginning in September 1969 was less likely than not the result of psychiatric disability consistent with VA's definition of insanity in § 3.354(a). R. at 2250.

Mr. Bowling died on August 21, 2016. Bowling R. at 1832. In December 2016, VA granted Ms. Bowling's request to substitute as the claimant in her husband's appeal. Bowling R. at 81.

In the July 31, 2018, Board decision on appeal, the Board found that "[t]he period of service from November 3, 1965[,] to April 24, 1970[,] is a bar to VA benefits." Bowling R. at 4. In so

4

doing, the Board acknowledged the private psychologists' opinions that Mr. Bowling was experiencing psychiatric disabilities during service, but noted that "psychological disorders do not, on their own, constitute insanity." Bowling R. at 16. Instead, the Board relied on the negative May 2016 VA opinion, which it determined was most probative in part because it considered the regulatory definition of insanity for VA purposes. *Id.* Consequently, the Board declined to reopen seven previously denied claims and denied six other claims. Bowling R. at 4.

### B. Mr. Appling

Mr. Appling served on active duty in the U.S. Army from October 1979 to May 1981. Appling R. at 249. In December 1980, he was convicted of several offenses at a special court-martial, Appling R. at 179-81, and was reassigned to a retraining brigade, *see* Appling R. at 163. While he was assigned to the retraining brigade, evaluators noted his continued difficulty getting along with others and provided counseling. Appling R. at 111, 114, 118, 122, 147, 158. He was reprimanded on numerous occasions for rule infractions and misconduct. Appling R. at 112-13, 116-17, 120-21, 125-28, 130-41, 143, 145-46, 148-51, 154-55, 160. In January 1981, Mr. Appling was disciplined under Article 15 of the UCMJ. Appling R. at 187-88.

In February 1981, Mr. Appling's superiors recommended discharge based on his continuing misbehavior. Appling R. at 124; *see* Appling R. at 183-84. A review board determined that Mr. Appling was capable of performing his military duty, but that the "[n]umerous discreditable incidents" of misconduct demonstrated his "unwillingness to meet and maintain minimum behavior standards." Appling R. at 176. The review board recommended that he be discharged under other than honorable conditions, based on misconduct. *Id.* He was discharged under the recommended authority in May 1981. Appling R. at 249.

In January 2010, in conjunction with a claim for VA disability benefits, Mr. Appling requested that VA review his character of discharge, which had previously been determined to be a bar to VA benefits. Appling R. at 477-79; *see id.* at 496. Specifically, he asserted that his misconduct was the result of depression resulting from racial harassment. Appling R. at 477. In a June 2010 statement, he further asserted that he was insane for VA purposes at the time of the conduct leading to his discharge. Appling R. at 482. In his March 2017 testimony before a Board member, he explained that at least some of his behavior was the result of alcoholism that began during basic training. *See* Appling R. at 19-25.

In the October 2018 decision on appeal, the Board found that there was no medical evidence of a psychiatric disorder during Mr. Appling's active service and noted that a binding VA General Counsel Precedent Opinion has held that behavior caused by a substance-abuse disorder does not fall within the scope of insanity for VA purposes. Appling R. at 6-7; *see* VA Gen. Coun. Prec. Op. 20-97, 11 (May 22, 1997) [hereinafter G.C. Prec. 20-97].

## II. CLASS ACTION MOTION

Appellants seek to "certify a class of veterans who have been or could yet be denied benefits based on VA's definition of 'insanity' as set forth in 38 C.F.R. § 3.354(a)." Motion at 1. Under Rule 23(c)(1)(A) of the Court's Rules of Practice and Procedure, the Court will determine whether to certify a class action "[a]t an early practicable time" after all relevant filings have been received, U.S. VET. APP. R. (23)(c)(1)(A), and likely success on the merits is not a prerequisite to class certification, *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 476-77 (2013) (citing *Schleicher v. Wendt*, 618 F.3d 679, 686 (2010)). At oral argument, appellants conceded that their class action motion would be moot if they do not prevail on the merits because no putative class member could obtain the requested remedy. *See* OA at 16:11-16:19; *see also Knox v. Serv. Emps. Int'l Union*, *Local 1000*, 567 U.S. 298, 307 (2012) (holding that a case becomes moot "when it is impossible for a court to grant 'any effectual relief whatever to the prevailing party'" (quoting *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)). Because, as discussed below, the Court affirms the July and October 2018 Board decisions on appeal, the Court will accept appellants' concession and dismiss the class action motion as moot.

The Court also holds, in the alternative, that appellants' class action motion does not satisfy this Court's necessity or superiority requirements for class certification. In *Monk v. Shulkin*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that this Court has the "authority to certify a class for class action" and that "class action suits [in this Court] could be used to compel correction of systemic error and to ensure that like veterans are treated alike." 855 F.3d 1312, 1321 (Fed. Cir. 2017). And here, systemic error—in this case, a regulation that allegedly violates due process and results in unequal treatment—is the harm asserted. *See* Bowling Br. at 4; Reply Br. at 1.

However, this Court has the authority to issue precedential decisions and, although we obviously will not categorically reject class action motions on that basis, the Court "will presume

6

classes should not be certified because our ability to render binding precedential decisions ordinarily will be adequate." *Skaar v. Wilkie*, 32 Vet.App. 156, 196 (2019) (en banc order). "[A] favorable precedential decision . . . binds VA in all pending and future claims." *Id*. at 198. And the Court has had, since its inception, the obligation to "hold unlawful and set aside . . . regulations issued or adopted by [VA] found to be . . . contrary to constitutional right, power, privilege, or immunity." 38 U.S.C. § 7261(a)(3)(B) (previously codified at 38 U.S.C. § 4061(a)(3)(B) (1988)). Given that any determination that a regulation is unconstitutional would be binding on VA, appellants must explain why a precedential decision would not be adequate in this instance to overcome the presumption against certifying a class. *See Skaar*, 32 Vet.App. at 196; U.S. VET. APP. R. 22(a)(3).

Overcoming that presumption requires a "showing by a preponderance of the evidence that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Skaar*, 32 Vet.App. at 196 (quoting FED. R. CIV. P. 23(b)(3)); *see* U.S. VET. APP. R. 22(a)(3) (requiring parties to "explain the reasons why a decision granting relief on a class action basis would serve the interests of justice to a greater degree than would a precedential decision granting relief on a non-class action basis"). In *Skaar*, the Court enumerated four non-exhaustive factors for the Court to consider on a case-by-case basis when determining whether the presumption has been rebutted:

> [W]hether (i) the challenge is collateral to a claim for benefits; (ii) litigation of the challenge involves compiling a complex factual record; (iii) the appellate record is sufficiently developed to permit judicial review of the challenged conduct; and (iv) the putative class has alleged sufficient facts suggesting a need for remedial enforcement.

32 Vet.App. at 197. No factor holds more weight than another, but the Court will, "as appropriate," "engage in a case-by-case balancing" to determine whether "a claimant has rebutted the presumption against aggregate action." *Id*. Even assuming, for the sake of argument, that appellants meet the first three enumerated factors, the Court holds that the fourth—enforcement—weighs dispositively against certifying a class in the instant appeal because a binding precedential decision would be adequate to provide relief to any valid prospective class members.

In this case, appellants seek "to certify a class that includes . . . those with final decisions that cannot be appealed to the Court" and, therefore, do not have a current or pending appeal to which a precedential decision would apply. Appellants' Reply Br. in Support of Appellants'

7

Motion for Class Certification at 12-13. In other words, appellants seek to certify a class that includes, among others, claimants with final VA denials because a precedential opinion would not otherwise be enforceable against them. But in *Skaar*, the Court described those with final, unappealable VA decisions as "expired" or "past" claimants and explained that the "notion of finality," 32 Vet.App. at 187, barred tolling the 120-day Notice of Appeal window for such expired or past claimants, even if they "later discovered their benefits denial was based on an incorrect reading of the law," *id*. at 188; *see also id*. at 189 (applying the principle to "past" claimants). Therefore, "expired" or "past" claimants cannot be part of the proposed class here and cannot help rebut the presumption that a precedent decision will provide adequate relief.

In post-*Skaar* supplemental briefing, appellants attempted to distinguish past and expired claimants in this case from those in *Skaar*. They assert that, even though past and expired claimants here have received final decisions, they nonetheless "have a free-standing due process claim which VA must adjudicate de novo." Appellants' Supplemental Memorandum (Supp. Memo.) of Law at 5 (citing *Cushman v. Shinseki*, 576 F.3d 1290, 1302 (Fed. Cir. 2009) (holding in the context of a CUE motion that due process rights were violated and remanding the matter for de novo review)). Initially, it is notable that Mr. Cushman's due process contention was presented in the context of a CUE motion and was not free-standing. Post-*Cushman*, the Federal Circuit indicated that it would leave for another day the issue of the viability of a free-standing due process claim. *Garcia v. Wilkie*, 908 F.3d 728, 736 (Fed. Cir. 2018) ("And we need not explore the broad question whether, after *Cook*, there could be a constitutional basis for allowing presentation of some due process allegations to revise otherwise-final VA decisions without proceeding by way of a CUE motion or a motion based on new and material evidence."). This Court has not since that time addressed that issue and need not do so to decide whether class certification is warranted because, regardless, appellants' argument is unpersuasive.[4]

Appellants argue that the "expired" or "past" claimants in their proposed class do not seek to abate the finality of prior decisions. Rather, they argue that these claimants would be entitled to de novo review of their *initial* claims and, therefore, *Skaar* does not bar their inclusion in the

---

[4] In the underlying *Garcia* decision in this Court, we expressly held that "even an allegation of a due process violation may not vitiate the finality of a decision." *Garcia v. Shulkin*, 29 Vet.App. 47, 55 (2017). The Federal Circuit did not address that part of the Court's decision, finding that, even if a due process violation could serve as the basis of revision on the basis of CUE, "there is no such basis in this case for overriding the CUE regulation on timely presentation of challenges." *Garcia*, 908 F.3d at 736.

proposed class. Appellant's Supp. Memo. at 6 (asserting that, for the purpose of their proposed class, "all 'past' and 'expired' claimants have available the remedy of 'future-future' claimants"). But even if a free-standing due process claim were allowable, and if the Court were to find that the regulation at issue here violates constitutional due process rights, and that appellants are correct that the appropriate remedy for such a violation is de novo review of prior final decisions, none of which we concede here, VA would be bound to conduct that review in accordance with—and affected claimants would potentially benefit from—intervening precedential decisions, such as a precedential decision in this case. Thus, even if appellants' "free-standing due process claim" arguments were allowable and could succeed as to past and expired claimants, that would not support their contention that a class decision would be superior to a precedential decision in this matter. Therefore, the Court will not consider this class certification argument further. *Cf. Skaar*, 32 Vet.App. at 199 (holding that the advanced age and radiogenic disability of all class members warranted certification of a class, rather than reliance on the ordinary course of litigation).

The Court could, of course, sua sponte narrow the proposed class to exclude "expired" and "past claimants." *See Godsey v. Wilkie*, 31 Vet.App. 207, 221 (2019) (holding that the Court can "*sua sponte* modify the class definition"). To that end, the Court has considered appellants' additional arguments that certifying a class is necessary to enforce a potential remedy as to the members of a modified class, but we remain unpersuaded that class certification is superior to a precedential decision. To support their argument, appellants assert that "it is very plausible that VA would not cure the Due Process violation nor faithfully execute the intent of Congress in any kind of prompt manner without the type of supervision provided through a class action." Appellants' Supp. Memo. at 10. But hypothetical noncompliance is inadequate to overcome the presumption that a precedential decision is adequate. *Compare Skaar*, 32 Vet.App. at 198 (holding that "willful noncompliance [is] unlikely in all but the most extreme case"), *and Ward v. Wilkie*, 31 Vet.App. 233, 242 (2019) (denying a motion for class certification with the expectation that VA would "take steps to immediately implement this precedential decision throughout the VA system and apply it to all [relevant] cases pending before VA"), *with Wolfe v. Wilkie*, 32 Vet.App. 1, 32-33 (2019) (holding that certifying a class was superior to a precedential decision because VA circumvented an earlier precedential decision on the same issue).

Ultimately, in arguing that the proposed class meets the commonality requirement, appellants expressly contend that "the facts of any individual case are irrelevant to the question in

dispute" and that "[t]he relief that is sought for each class member is the application of the constitutional standard to their claim." Appellants' Reply Br. in Support of Appellants' Motion for Class Certification at 14. In other words, the specific relief sought for the prospective class, even if modified to exclude "past" and "expired" claimants, is the invalidation of the regulation under which their eligibility for benefits was or would otherwise be determined. Because a precedential decision would have substantially the same effect, the Court is not persuaded that certification of a class is necessary or superior in this matter.

## III. MERITS ARGUMENTS

### A. Appellants

The sole dispute in this case is the validity of 38 C.F.R. § 3.354(a).[5] Appellants argue that VA's definition of "insanity," as stated in § 3.354(a), "violates constitutional due process of law" because it "results in arbitrary and inconsistent outcomes," Bowling Br. at 4; *see* Reply Br. at 1 (asserting that § 3.354(a) "creates an unnecessary risk of arbitrary and inconsistent decision making"), and because it "fails to provide adequate notice" to claimants as to the evidence needed to support a finding of insanity, Reply Br. at 11. They assert that this is so because congressional intent in enacting the Servicemen's Readjustment Act of 1944, ch. 268 § 300, 58 Stat. 284, 286, now codified at 38 U.S.C. § 5303(b), the statute underlying § 3.354(a), was to implement "a dramatically liberalizing change" that would "severely limit the number of people denied benefits," Bowling Br. at 8, yet large numbers of former servicemembers with psychiatric disorders are denied VA benefits based on VA's character of discharge determinations. *Id*. at 19.

Appellants look to both medical and legal definitions of "insanity" to support their contention that the regulatory definition is narrower than Congress intended and results in arbitrary and inconsistent outcomes. Appellants assert that, to the extent that the regulatory definition has any basis in medical science, the specific language and phrasing VA used traces back as far as the nineteenth century and, therefore, reflects neither congressional intent nor a modern understanding of mental health. *Id*. at 10-14. They further assert that VA examiners lack a clear understanding as to how to render a medical opinion regarding insanity, in part because of a lack of training. *Id*. at 15-16. Likewise, to the extent that "insanity" is a legal determination, they assert that the

---

[5] Therefore, even though, for example, the Board in Mr. Appling's case also found his in-service conduct willful and persistent, that issue is not before the Court because Mr. Appling did not challenge it.

definition of "insanity," as now used in the criminal context, is "dramatically more restrictive" than it was when Congress enacted what is now codified at section 5303(b), and therefore cannot reflect congressional intent. *Id*. at 9. Furthermore, they assert that the regulation "fails to provide adequate notice" to claimants as to how to support a claim of insanity. Reply Br. at 11.

Appellants posit that the cumulative results of character of discharge adjudications are evidence that § 3.354(a) is out of step with what Congress intended in enacting section 5303(b). They assert that "changes in military discipline practices" have contributed to "a dramatic rise in the proportion of former servicemembers that are ineligible for [VA] benefits due to the character of their discharge." Bowling Br. at 17. And when those former servicemembers seek VA benefits, appellants contend that the "available information suggests that large numbers . . . are being barred from benefits because of VA's arbitrary and inconsistent application of its regulation." *Id*. at 19; *see* Reply Br. at 7-8. They assert that this is shown through statistics reflecting that VA denies most claims seeking to establish that the character of a veteran's service is not a bar to benefits, Bowling Br. at 19, and that the raw number of claims of insanity accepted versus rejected varies among individual adjudicators, *id*. at 19-20. This, they contend, "strongly suggests that global outcomes are generally inconsistent with Congress's liberal intent[] and that individual outcomes vary substantially based upon which adjudicator decides their claim." *Id*. at 21.

Appellants note that VA has provided additional guidance on § 3.354(a) through G.C. Prec. 20-97. *Id*. at 26-27. They argue, however, that "the opinion only adds [a] marginal amount of additional clarity and is insufficient to avoid vagueness or arbitrary decision making" because it "gives clear guidance for only two subsets of fact patterns," is "wildly underinclusive" with respect to the broad range of currently recognized psychiatric diagnoses, and has been "widely misunderstood," Bowling Br. at 27-28; *see* Reply Br. at 9.

Ultimately, appellants contend that, because (1) the number of decisions granting access to VA benefits varies among individual adjudicators; (2) VA examiners lack access to training on how to apply VA's definition of "insanity"; and (3) the definition is so vague that claimants lack guidance as to what evidence is necessary to support a claim of insanity, VA's attempts to apply § 3.354(a) result in arbitrary and inconsistent outcomes. Bowling Br. at 4, 15, 19-21; Reply Br. at 9. And because "the essence of due process of law is that the government must act in a way that is reasonably predictable and consistent," Bowling Br. at 23, they assert that § 3.354(a) "does not provide due process of law," *id.* Therefore, appellants ask the Court to invalidate the current

11

regulation, "require the Secretary to promptly adopt a revised regulation," and, if the Secretary fails to act promptly, impose an interim rule. *Id*. at 29.

## B. Secretary

The Secretary disputes appellants' contention that 38 C.F.R. § 3.354(a) is unconstitutional. First, he characterizes appellants' argument as presenting "a facial challenge to the constitutionality of the regulation," Secretary's Br. at 29, and notes that "[f]acial constitutional challenges are disfavored," *id*. at 30 (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)).[6] He asserts that appellants have not met their burden to show that the regulation cannot be constitutionally applied and, therefore, their facial challenge must fail. *Id*. at 40-41 (citing *Schall v. Martin*, 467 U.S. 253, 264 (1984)). The Secretary further notes that appellants have not identified the standard of review applicable to their specific claim for relief and that, because they have not done so, they have neither adequately identified the alleged error nor met their burden to establish error in fact. *Id*. at 30-32. On those bases, the Secretary seeks affirmance of the July and October 2018 Board decisions. *Id*. at 32 (citing *Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006); *Coker v. Nicholson*, 19 Vet.App. 439, 442 (2006) (per curiam), *vacated on other grounds sub nom. Coker v. Peake*, 310 F. App'x 371 (Fed. Cir. 2008) (per curiam order)).

To the extent that appellants cite congressional intent as evidence that, regardless of the specific due process violation, the implementing regulation is unconstitutional, the Secretary argues that "Congress' intent is wholly out of place in a due-process analysis," Secretary's Br. at 40, because that intent has "no bearing on what the Bill of Rights requires," *id.* at 34; *see id.* at 35 (asserting that review of congressional intent is an invitation to abandon the principle of separation of powers, as it is the Court's, not Congress's, duty to determine what is constitutional). And as for appellants' argument that a due process violation can be inferred based on data indicating inconsistent outcomes across individual adjudicators, the Secretary notes that they provided no specific details to support their assertion that "this inconsistency stems from vagueness in the insanity definition," as opposed to differences in the underlying fact patterns. *Id*. at 44. In other words, appellants haven't shown that "similarly situated veterans are being treated differently." *Id*.

---

[6] Appellants appear to concede that they make only a facial challenge, noting in reply that an "as applied" review "would actually be a greater violation of judicial restraint" than considering whether it was facially invalid. Reply Br. at 12.

As for appellants' argument that a rewritten regulation may be more easily and consistently applied, the Secretary responds that they remain free to "petition VA for a rulemaking under 38 U.S.C. § 502." *Id*. at 46 (further asserting that the Court's review is limited to whether the regulation provides fair notice, not whether it is wise). Finally, to the extent that appellants assert that changes in how the military service departments, rather than VA, reach discharge determinations have negatively affected servicemembers' ability to access VA benefits, the Secretary notes that this is not the proper forum in which to seek redress. *Id*. at 48 n.14.

## IV. MERITS ANALYSIS

### A. Due Process

The Fifth Amendment to the U.S. Constitution provides that: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In other words, "the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Entitlement to VA disability benefits is a property interest protected by the Due Process Clause. *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). And when the federal government proposes to deprive an individual of a property interest, that individual "must be provided with notice and an opportunity to be heard." *Thurber v. Brown*, 5 Vet.App. 119, 122 (1993) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Fugere v. Derwinski*, 1 Vet.App. 103, 108 (1990)).

"Notice is constitutionally sufficient if it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Edwards v. Peake*, 22 Vet.App. 29, 32 (2008) (quoting *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)), *aff'd sub nom. Edwards v. Shinseki*, 582 F.3d 1351 (Fed. Cir. 2009); *see Cogburn v. McDonald*, 809 F.3d 1232, 1236-37 (Fed. Cir. 2016) (holding that the basic features of due process are notice and an appropriate opportunity to be heard). Imprecision does not per se indicate a lack of notice. *See United States v. Williams*, 553 U.S. 285, 306 (2008) ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."); *Grayned v. City of Rockford*, 408 U.S. 104, 108-11 (1972) (although expressing concern over the imprecision of the phrase

13

"tends to disturb" in an anti-noise ordinance, concluding that even that language gave fair notice and was not vague, and that, on the whole, it was clear what the ordinance prohibited); *Cox v. Louisiana*, 379 U.S. 559, 568-69 (1965) (holding that, although "[i]t is clear that there is some lack of specificity in a word such as 'near,'" in context, the term "concern[ed] a limited control of the streets and other areas in the immediate vicinity of the courthouse and is the type of narrow discretion which this Court has recognized as the proper role of responsible officials" in making determinations regarding the time, place, and manner of demonstrations and was therefore not unconstitutionally vague).

Moreover, it is well established that "[f]acial [constitutional] challenges are disfavored." *Wash. State Grange*, 552 U.S. at 450. This is so because such claims "often rest on speculation" and "run contrary to the fundamental principle of judicial restraint" that courts should not anticipate questions nor formulate rules of constitutional law broader than that required by the facts presented. *Id*. As a result, a facial constitutional challenge "is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [challenged action] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Those seeking to raise such a challenge "bear a heavy burden of persuasion." *Crawford v. Marion County Election Bd*., 553 U.S. 181, 200 (2008). The Court reviews constitutional questions de novo. *Buzinski v. Brown*, 6 Vet.App. 360, 365 (1994).

### B. VA's Definition of Insanity

Under 38 U.S.C. § 5303(b), if a servicemember was insane when he or she committed an offense leading to his or her "court-martial, discharge, or resignation, . . . such person shall not be precluded from benefits under laws administered by the Secretary based upon the period of service from which such person was separated." In other words, a finding of insanity excuses conduct that would otherwise be a bar to VA benefits. *See* 38 C.F.R. § 3.12(b), (d)(4) (2020).

An "insane" person, for VA purposes, is

> one who, while not mentally defective or constitutionally psychopathic, except when a psychosis has been engrafted upon such basic condition, exhibits, due to disease, a more or less prolonged deviation from his [or her] normal method of behavior; or who interferes with the peace of society; or who has so departed (become antisocial) from the accepted standards of the community to which by birth and education he [or she] belongs as to lack the adaptability to make further adjustment to the social customs of the community in which he [or she] resides.

38 C.F.R. § 3.354(a) (2020). The phrase "due to disease" applies to all three circumstances mentioned in the regulation, specifically (1) a more or less prolonged deviation from the normal method of behavior, (2) interference with the peace of society, and (3) departure from the accepted standards of the community so as to lack adaptability to adjust to the social customs. *Zang v. Brown*, 8 Vet.App. 246, 252-53 (1995). A servicemember need not show that insanity caused the misconduct that led to discharge, but he or she must show medical evidence confirming insanity existed during the misconduct in question. *Gardner v. Shinseki*, 22 Vet.App. 415, 419 (2009).

In May 1997, VA issued a General Counsel Precedent Opinion providing additional clarification that insanity for VA purposes involves severe mental disability and excludes minor episodes, disorderly conduct, eccentricity, and behaviors resulting from personality disorders or substance abuse. G.C. Prec. 20-97. It also explains how to apply the regulation in the three circumstances mentioned in § 3.354(a); for example, how to determine whether an individual's behavior deviates from his or her normal behavior. *Id.* at 7-11.

### C. Appellants Have Not Met Their Burden

In arguing that VA's definition of "insanity" violates claimants' Constitutional right to due process because it is unconstitutionally vague, appellants assert that they need not identify any particular standard of review. Reply Br. at 1-3. Instead they argue that "the essence of due process of law is that the government must act in a way that is reasonably predictable and consistent," Bowling Br. at 23, and that VA's definition of "insanity" "results in arbitrary and inconsistent outcomes," *id.* at 4. In other words, they contend that arbitrary and inconsistent outcomes are sufficient evidence of a due process violation, and one need not identify a particular type of due process error or identify a specific standard of review. *See* OA at 1:19:12-1:20:05; *see also* Reply Br. at 3. In these appeals, they ask the Court to infer that the definition of "insanity" in § 3.354(a) results in arbitrary and inconsistent outcomes based on three main indicators: (1) Congress intended "to severely limit the number of people denied benefits"; (2) statistics reflect, among other things, that few servicemembers discharged under other than honorable conditions are found eligible for benefits based on insanity; and (3) VA personnel are unable to consistently and accurately apply § 3.354(a) because examiners lack training and because individual VA adjudicators do not reach favorable findings of insanity at equal rates due to the vagueness of the definition. Bowling Br. at 8, 15-20.

But in raising these arguments, appellants rely on a significant amount of extrarecord evidence to support their assertion that the number of former servicemembers denied eligibility for VA benefits indicates that VA's application of § 3.354(a) is arbitrary and capricious. *See*, *e.g.*, Bowling Br. at 17-20; Reply Br. at 7-8; *see also* OA at 31:09-31:22 (requesting that the Court take judicial notice of the extrarecord evidence). And as a general rule, the Court is precluded from considering any material that is not contained in the record before the Board. *See* 38 U.S.C. § 7252(b); *Euzebio v. McDonough*, ___ F.3d ___, ___, 2021 WL 800584, at *12 (Fed. Cir. Mar. 3, 2021) (citing *Kyhn v. Shinseki*, 716 F.3d 572, 578 (Fed. Cir. 2013)) (holding that this Court is prohibited from considering evidence that was not in the record before the Board to make factual findings in the first instance); *Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990) (holding that review in this Court shall be on the record of proceedings before the Secretary and the Board).

The Court may sua sponte take judicial notice of an adjudicative fact "not subject to reasonable dispute" because that fact is either generally known within the Court's jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201; *see Monzingo v. Shinseki*, 26 Vet.App. 97, 104 (2012) (per curiam). While the Federal Rules of Evidence are not binding on this Court, it is well recognized that they provide "useful guidance" to this Court. *See Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 302 (2008); *Hampton v. Nicholson*, 20 Vet.App. 459, 462 n.1 (2006) (looking at Rules 801(d)(2), 803(6), and 805 for guidance in determining facts relevant to the Court's jurisdiction); *see also AZ v. Shinseki*, 731 F.3d 1303, 1316 (Fed. Cir. 2013) (agreeing with this Court that the Federal Rules of Evidence "offer useful guidance").

Here, appellants ask that we take notice of evidence that, at least in some cases, includes numeric data or references historical events, which could potentially qualify as factual evidence that is not reasonably disputed. *See*, *e.g.*, VETERANS LEGAL CLINIC, LEGAL SERVICES CENTER OF HARV. LAW SCHOOL & SWORDS TO PLOWSHARES, UNDERSERVED: HOW THE VA WRONGFULLY EXCLUDES VETERANS WITH BAD PAPER 15-17 (2016) (reporting statistics as to the percentage of character of discharge findings that service was dishonorable broken down by RO and by Board member). But they do not rely on this evidence to establish facts not subject to reasonable dispute. Rather, they ask the Court to take judicial notice of the evidence and then draw inferences from it to support their arguments. Although the evidence may cite certain facts or figures or report on past events, it does not show—in a manner that is not subject to reasonable dispute—that the

number of servicemembers barred from VA benefits signifies that more are denied access to benefits than Congress intended, that the reason servicemembers are barred from VA benefits is because VA adjudicators are applying § 3.354(a) in an arbitrary and capricious manner, or that claimants receive inadequate notice of the evidence necessary to support their claims. *See*, *e.g.*, *id*. at 16 (asserting that the reported statistics "demonstrate[]" that the regulation is inadequate). Indeed, appellants do not contend that the extrarecord numerical data evidence speaks directly to any of those questions or to whether purported vagueness in the regulation is the root cause.

Moreover, to the extent that the extrarecord evidence suggests that such a relationship is present in some cases, *see* Bowling Br. at 19 (arguing that the cited evidence "suggests" that former servicemembers are barred from benefits because § 3.354(a) is applied in an arbitrary and inconsistent manner), 21 (same); Reply Br. at 7 (arguing that the cited evidence "strongly indicates" that the regulation "produces significant variation in outcomes"), we will not rely on speculation about these cases in reviewing a facial constitutional challenge, *see Wash. State Grange*, 552 U.S. at 450 (citing *United States v. Raines*, 362 U.S. 17, 22 (1960) ("The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined.")). Thus, the Court is unable to consider the cited extrarecord evidence, and any arguments dependent on that evidence are inadequately supported. *See* 38 U.S.C. § 7252(b); *Kyhn*, 716 F.3d at 578; *Rogozinski*, 1 Vet.App. at 20; *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (holding that the appellant has the burden of demonstrating error), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

As for appellants' facial challenge[7] that § 3.354 does not provide fair notice as to the elements necessary to establish insanity, the Court concludes that appellants have not so demonstrated. As previously noted, "[f]acial challenges are disfavored," *Wash. State Grange*, 552 U.S. at 450, and appellants bear the heavy burden of persuading the court that "*no* set of circumstances exists under which the [challenged action] would be valid," *Salerno*, 481 U.S. at 745 (emphasis added); *see Crawford*, 553 U.S. at 200. While appellants may be correct that § 3.354 is not a model of clarity, they have not demonstrated that VA is incapable of applying

---

[7] To the extent that there remains an unresolved question as to whether a facial, as opposed to an applied, vagueness challenge is permitted under these circumstances, or whether the Court should review the matter under the "pervasive disagreement" standard outlined in *Johnson v. United States*, 576 U.S. 591, 601 (2015), because appellants have not adequately supported their argument with evidence the Court may consider, the question need not be resolved today.

§ 3.354(a) or that the regulation fails to provide fair notice of the factors by which insanity may be established, except by way of speculation based on the extrarecord opinion evidence that the Court may not consider. *See generally* Bowling Br. at 15-21; *see also* Opposed Motion for Class Certification at 6 (asserting that "the specific facts of each case are irrelevant to the legal issue presented").[8] While the notice provided by the challenged regulation may lack perfect clarity, appellants have not cited non-speculative evidence sufficient to indicate that VA cannot apply § 3.354 or that it affords veterans inadequate notice of the evidence required to demonstrate insanity. Therefore, appellants have not met their burden as regards this argument. *See Williams*, 553 U.S. at 306; *Grayned*, 408 U.S. at 108.

And to the extent that changes in military discipline procedures have a bearing on this issue, the Secretary is correct that this is not the proper forum in which to raise that concern because the Court lacks jurisdiction over military service department decisions. *See Duro v. Derwinski*, 2 Vet.App. 530, 532 (1992) (holding that, pursuant to 38 C.F.R. § 3.203, a service department finding as to qualifying service for VA benefits is binding on VA). Furthermore, whether service departments are unfairly issuing bad discharges does not speak to the issue on appeal, which is whether § 3.354(a) can be fairly understood. *See* Secretary's Br. at 48 n.14.

The Court has considered the remainder of appellants' arguments offered in support of their assertion that § 3.354(a) is unconstitutionally vague and deprives claimants of due process, including, but not limited to, their assertions that unconstitutionality may be inferred from a historical review of congressional intent, that § 3.354 does not incorporate a modern medical definition of insanity or relate to the definition of insanity at the time of its adoption, that examiners lack sufficient training to apply § 3.354, and that unconstitutionality may be determined by applying all due process tests, concurrently, to what they characterize as evidence demonstrating an inconsistent application of the regulation. *See* Bowling Br. at 4-26; Reply Br. at 3. But although the regulatory language remains unchanged from when the Court found it "less than clear," over 25 years ago, *Zang*, 8 Vet.App. at 252, the Court cannot consider the wholly unsupported arguments raised here because they are legally undeveloped or factually rest on speculation and extrarecord evidence the Court may not consider. *See* 38 U.S.C. § 7252(b); *Kyhn*, 716 F.3d at 578;

---

[8] As always, claimants may seek judicial review of Board decisions finding that the requirements for establishing insanity under § 3.354 are not met based on the specific facts of their individual cases. *See* 38 U.S.C. §§ 7252(a) and 7266(a).

*Locklear*, 20 Vet.App. at 416 (holding that the Court will not entertain underdeveloped arguments); *Hilkert*, 12 Vet.App. at 151; *Rogozinski*, 1 Vet.App. at 20; FED. R. EVID. 201.

In summary, appellants have not met their burden to demonstrate that VA is incapable of applying § 3.354(a) fairly or that claimants lack adequate notice of how to succeed under the regulation. And because no other argument was presented, including no argument as to whether the regulation was applied correctly in the underlying individual cases, there is no other basis on which to evaluate the Board decisions on appeal. Therefore, the Court will affirm the July 2018 Board decision in Ms. Bowling's case and the October 2018 Board decision in Mr. Appling's case.

## V. CONCLUSION

Upon consideration of the foregoing, the portion of the July 31, 2018, Board decision finding that Mr. Bowling's character of discharge for the period of service from November 3, 1965, to April 24, 1970, was a bar to VA benefits for claims based on that service period, and the October 10, 2018, Board decision regarding Mr. Appling's character of discharge are AFFIRMED. The portion of the July 31, 2018, Board decision denying 13 additional claims on a basis other than the character of Mr. Bowling's discharge from his second period of service and the motion for class certification are DISMISSED.